No. 19,347.

CONRAD C. GREEN, ET AL., *v.*
THE CHAFFEE DITCH COMPANY, ET AL.
(371 P. [2d] 775)

Decided April 30, 1962. Rehearing denied June 11, 1962.

Messrs. MARCH and WELLS, Messrs. HOLME, ROBERTS, MORE and OWEN, Mr. JOHN M. DICKSON, for plaintiffs in error.

Mr. ALBERT P. FISCHER, Mr. WARD H. FISCHER, Mr. JAMES D. BEATY, for Protestants, The Chaffee Ditch Company, The Jackson Ditch Company, The Water Supply and Storage Company, and The Pleasant Valley and Lake Canal Company.

Mr. ROBERT G. SMITH, Mr. WILLIAM BOHLENDER, for

Protestants, The Larimer and Weld Irrigation Company, The Larimer and Weld Reservoir Company, The Windsor Reservoir and Canal Company, and The Cache la Poudre Irrigating Ditch Company.

Mr. RONALD H. STRAHLE, for Protestants, The Arthur Irrigation Company, The Warren Lake Reservoir Company, The New Mercer Ditch Company, and The Larimer County Canal No. 2 Irrigating Company.

Mr. WILLIAM H. ALLEN, Mr. WILLIAM C. STOVER, Mr. EUGENE E. MITCHELL, for Protestants, The North Poudre Irrigation Company, the Box Elder Ditch Company, The Jos Ames Ditch, The Taylor and Gill Ditch Company, Don Nesbitt, and Adele Nesbitt.

Mr. WILLIAM R. KELLEY, for Protestants, The New Cache la Poudre Irrigating Company and The Cache la Poudre Reservoir Company.

Mr. THOMAS A. RICHARDSON, for Protestant, The City of Greeley, Colorado.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

· THE action in the trial court was commenced by plaintiffs in error, hereinafter referred to as plaintiffs or by name, who sought a decree changing the point of diversion of water from the Cache La Poudre river in Larimer county. Defendants in error, to whom we will refer as protestants or by name, were appropriators of water from the same stream and protested the requested change of point of diversion.

The city of Fort Collins entered into contracts for the purchase of 3.2 cubic feet of water per second from persons entitled to the use thereof and supplied to them by

the Jackson Ditch Company. All of the plaintiffs except the city of Fort Collins, Lydia Hoffman Morrison and Milton Coy Hoffman, are vendors to the city of Fort Collins of some portion of the 3.2 c.f.s. referred to, carried by the Jackson Ditch, which water is a portion of priority No. 3 from the Poudre River with a date of June 10, 1861.

The controversy as related to the Jackson Ditch water (priority No. 3) is wholly unrelated to other phases of the case. The issues concerning the 3.2 c.f.s. were separately tried in the trial court and are treated in Part I of the briefs filed in this case.

The second phase of the case involves the right of the city of Fort Collins to change the point of diversion of 8 c.f.s. of water from the headgate of the Coy Ditch to a point upstream for use in the domestic water system of the city. In this phase of the controversy plaintiffs Lydia Hoffman Morrison and Milton Coy Hoffman had contracted to sell 8 c.f.s. of water to the city of Fort Collins to come from priority No. 13 on the Poudre river.

We consider first the controversy with reference to the Jackson Ditch water (priority No. 3). One Antoine Janis was the original appropriator of this and other waters. It is undisputed that in about the year 1870 Janis entered into a contract with the Dry Ditch Company (now the Jackson Ditch Company). All the plaintiffs interested in securing a change in the point of diversion of the 3.2 c.f.s. are successors in interest to the rights of Janis as those rights were affected by the said contract between Janis and Dry Creek Ditch Company. The record before us does not disclose the details of this agreement. The findings of the trial court contain the following pertinent language:

" * * * That the users of said water all derive their right to the use of water under and by virtue of a contract between Antoine Janis and the Dry Creek Ditch Company, now the Jackson Ditch Company, entered into about the year 1870. That the terms and conditions of

the contract were determined by the decrees in certain cases in this Court, being Numbers 6176, 6177, 6178 and 6179, in which the predecessors of all of the present users of this water, who are petitioners here were parties and the petitioners are bound by said Decrees.

"That by said Decrees and contract, the users of said water were entitled to use the same for the irrigation of certain described land when necessary for the proper irrigation thereof. That the petitioners are not the owners or claimants, as defined by statute, of the water herein in said first five causes of action attempted to be transferred nor are they stockholders in the Jackson Ditch Company.

"That any use of said water upon any land other than the land specified in said contract and Decrees, or use of said water for a longer period of time than the needs of said lands require would violate said contract and constitute an impairment thereof. A change of point of diversion of said water, without the consent of the Jackson Ditch Company would impose a greater detriment on said company and enlarge the benefits to the users of said water in excess of the benefits contracted for, contrary to the contractual obligations and rights to have water furnished for the irrigation of specified lands. That to permit a change of point of diversion would require the Court to make a new and different contract with increased detriments on one side and increased benefits on the other, which the Court cannot do. The Jackson Ditch Company is the owner of said water attempted to be changed to the new point of diversion, subject only to the rights of the petitioners to use said water on certain lands located in the Southwest Quarter of Section 29, Township 8 North, Range 69 West of the 6th P.M.

"When not necessary for the proper irrigation of the described lands, the 3.2 c.f.s. from said priority is available for, and is used by, stockholders of the ditch. Thus, any enlarged use of the water, in excess of that allowed by the contract and Decrees, and accordingly, any change of point of diversion, would impose a greater burden on

the company and its stockholders, and would conversely enlarge the benefits to the petitioners, in excess of the detriments and benefits contracted for."

In essence, the trial court concluded that the decrees of court entered in actions theretofore litigated in the district court of Larimer county were res judicata on the questions: (1) as to whether the water here in dispute could be removed from the land upon which it was used by Janis and his successors in interest; and (2) as to whether plaintiffs were the owners of a "water right" as that term is used in connection with the appropriation doctrine as distinguished from a contractual right to make use of water on specific lands.

The pleadings and decrees in each of the cases previously decided are part of the record before us. In those actions the several plaintiffs (all of whom were represented by the same attorneys) brought actions to compel the Jackson Ditch Company to deliver certain amounts of water for the irrigation of specifically described lands. The complaints in those cases contained, inter alia, the following allegations:

"That the plaintiff is the owner in fee simple and in possession of the following described lands: [here follows legal description]; and is the owner by purchase and in possession of certain water rights used in and for the irrigation of a portion of the above described lands, to-wit: [the specific amount of water claimed from priority No. 3 is here set forth]. * * * That plaintiff is the owner as aforesaid not only of the right to the use of [the claimed amount of water] from Priority No. 3 of Dry Creek Ditch or Jackson Ditch aforesaid but of any other waters of any of said priorities that may be flowing in said ditch at the times plaintiff requires same as aforesaid for the irrigation of his said lands and crops thereon."

The complaints further contained the allegation that the Jackson Ditch Company "claims some title or right in and to the said water rights of plaintiff adverse to the

right, title, interest and estate of the plaintiff and plaintiff avers that such claim is unwarranted and without foundation."

The prayer of plaintiffs in said actions sought relief against the Jackson Ditch Company, inter alia, as follows:

" * * * that the defendant be required to set forth the nature of its claims to said water right, that the plaintiff be adjudged to be the owner of [the claimed water right] * * * that plaintiff's title to said water be quieted against all claims of the defendant, * * *. "

In each of said actions the Jackson Ditch Company filed answer in which it denied that plaintiff was the owner of the water right in question and alleged that it was "the owner of all of said priorities and of the ditch theretofore owned and operated by the predecessor in title and interest of this defendant." (The Dry Creek Ditch Co.)

In each of said actions the court held that the Jackson Ditch Company was the owner of the ditch to which there had been awarded "priorities or right to the use of water from the Cache la Poudre River" which included "Priority No. 3 as of date June 10, 1861 * * *. " The said decrees further recited that after the water adjudication of April 1, 1882,

" * * * the defendant herein thereafter became the owner of said ditch and became the owner of the said priorities and appropriations thereof, subject, however, to certain rights therein under a contract between one Antoine Janis and the said The Dry Creek Ditch Company entered into in about the year 1870, whereby The Dry Creek Ditch Company did at said time take and use the river headgate and ditch therefrom constructed by said Antoine Janis about the year 1861 for the purpose of taking and using waters for the irrigation of lands lying thereunder, and in consideration thereof the contract provided that lands of the said Antoine Janis should receive from the said Dry Creek or Jackson Ditch suffi-

cient waters at all, times. when required for the proper irrigation thereof. * *. *.''

The decrees in the said actions were entered January 2, 1931.

Plaintiffs in the present action are in privity with the plaintiffs in the actions in which the said decrees were entered, and are bound by the construction placed on the contract between Antoine Janis and the Dry Creek Ditch Company by those decrees.

■ Under the 1931 decrees it was determined that the Jackson Ditch Company was the owner of "the said priorities and appropriations thereof." It was adjudged that the rights of those persons then standing "in the shoes" of the present plaintiffs were only contractual rights to make use of water on specific lands. Such a contractual right is far different from the "water right" acquired by Janis by his original appropriation, diversion and application to a beneficial use. Originally the right of Janis had the status of real property and could be conveyed without reference to the land on which it had been used.

It was determined by the court decrees entered in 1931 that after the execution of the said contract Janis was no longer the owner of a water right. He then became only a consumer whose rights were determined by contract, and his successors in interest acquired only his rights thereunder. The rights of plaintiffs are not comparable to those enjoyed by shareholders of the Jackson Ditch Company. Shareholders of the company are the equitable owners of the water rights adjudicated to the ditch. Plaintiffs in this action are not shareholders of the Jackson Ditch Company.

■ ■ The pleadings in the cases which resulted in the entry of the 1931 decrees raised issues which required an adjudication on the precise question, the answer to which controls the result in the present case. The issue was there determined and the decrees are res judicata of the question of the right of plaintiffs to secure a change

in the point of diversion. We think it sufficient to direct attention to the statements of the applicable general rules quoted with approval by this Court in *Craddock v. Palmer, Administratrix,* 91 Colo. 79, 11 P. (2d) 807, as follows:

" 'When a right or fact has been judicially tried and determined by a court of competent jurisdiction, * * * the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties, and those in privity with them in law or estate.' 15 R.C.L. p. 953, §430.

" 'When a judgment establishes the law of the case, * * * it becomes a rule of property as to the subject matter of the suit, and passes with it to all persons subsequently claiming under such parties, * * *.' Id. p. 960, §435."

It is immaterial that the present action is to change the point of diversion and that the prior action was to enforce a contract. Likewise, it is immaterial that the plaintiffs in the earlier actions are not plaintiffs in the instant case because the latter are in privity of estate with the former. From 30A Am. Jur. (Judgments) Sec. 371, pages 411, 415, we quote:

"It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases it is also immaterial that the two actions are based on different grounds, or tried on dif-

ferent theories, or instituted for different purposes, and seek different relief.

"If the existence, validity, or construction of a contract or other obligation has been adjudicated in an action, it is res judicata when it comes again in issue in another action between the same parties, though the immediate subject matter of the two actions is different. The question as to the extent that a judgment or decree based upon a decision construing an instrument is final, as res judicata, on the validity of such instrument in a later suit to annul it, depends primarily upon whether the validity of the instrument is regarded as having been at issue in the original suit. * * * "

The opinion of this court in *Newby et al. v. Bock*, 120 Colo. 454, 210 P. (2d) 985, is in accord with the foregoing statement. It follows that the judgment as it relates to the first phase of the action must be affirmed.

We now consider that phase of the controversy relating to the application to change the point of diversion of 8 c.f.s. of water presently withdrawn from the Cache La Poudre river at the headgate of the Coy Ditch.

Lydia Hoffman Morrison and her brother Milton Coy Hoffman are the owners of seventy-two acres of land along the bank of the river. In the water adjudication of April 11, 1882, under priority No. 13, the Coy Ditch was awarded 31.63 c.f.s. from the stream. One-half of this water right, or approximately 16 c.f.s., is owned by Morrison and Hoffman. They entered into a contract to sell to the city of Fort Collins 8 c.f.s. of this water, and the city requests permission to change the point of diversion thirteen miles upstream. Numerous protests were filed to the requested change. These protests contain the assertion that Morrison and Hoffman did not own 16 c.f.s., and that if any such water rights had ever existed they had been abandoned.

The trial court entered findings which, in pertinent part, contain the following:

"That the land owned by said petitioners, Milton Coy Hoffman and Lydia Hoffman Morrison, irrigated by said water is seventy-two acres along the river bottom, the Cache La Poudre River dividing said land. That the top soil is a sandy loam and varies in thickness from about five feet to a few inches and is underlain with coarse gravel, which in some places comes to the surface. That because of the soil conditions and the proximity to the river, all water applied to said land, not consumed by plant life and evaporation, returns to the river within a very short time and again becomes a part of the river and available to other appropriators. That the amount of water necessarily consumed by plant life to produce a maximum crop, in addition to natural rainfall, is 15 inches of water or one and one-fourth acre feet of water for each acre irrigated, thus requiring 90 acre feet of water each year for the proper irrigation of said land. That the efficiency of water on this particular land is 25%, requiring the application to this land of 360 acre feet of water during each irrigating season to produce maximum crops. That in addition to the 90 acre feet of water consumed on this land, five acre feet are lost by evaporation and seepage while the water is in transit from the headgate of the Coy Ditch to the Hoffman-Morrison farm, making a total consumptive use of 95 acre feet of water each year. That the only domestic use of this water has been a small amount for the watering of livestock. That the irrigating season on this land has been from April 15th to October 15th of each year.

"That the City of Fort Collins, during the period from April 15th and October 15th of each year has an average return flow through its sewage disposal plant, storm sewers and other sources of 50% of the water taken in at its intake pipeline.

"That for many years last past, and ever since the entry of the original adjudication Decree, the petitioners Milton Coy Hoffman and Lydia Hoffman Morrison and their predecessors in title and interest have never bene-

ficially used at any one time more than eight cubic feet of water per second of time for the irrigation of the lands now owned by them. Any diversions by petitioners or others in excess of that amount were a subterfuge and not made in good faith.

"That any diversion of water from said priority from October 16th of any year to April 14th, inclusive, of the following year, except for livestock purposes, would injuriously affect the storage rights of protestants, or some one or more of them, as they have historically depended upon the filling of their storage decrees during said time."

The court decreed inter alia that:

"No diversion from Priority No. 13 awarded to the Coy Ditch can be transferred without injury to junior appropriators, except under the conditions herein set forth, and any transfer of water, heretofore beneficially used, must be upon condition that the land heretofore irrigated must be forever deprived of irrigation water from this Decree, and cannot be a transfer of water not needed or beneficially used.

"That there can be diverted from the headgate of the Coy Ditch to the headgate of the City of Fort Collins pipeline without injury to the protestants, that amount of water which, when the return flow from the City sewage plant and other sources is considered, permits the City to consumptively use 95 acre feet of water during the irrigating season. Therefore, under the foregoing findings, the City should be permitted to divert 190 acre feet of water during each irrigation season under the conditions that the City at no time shall divert more than eight cubic feet of water per second of time, and the City shall divert no water under said Decree after October 15th or before April 15th of each year, and that no diversion be made under said Priority No. 13 by Milton Coy Hoffman and Lydia Hoffman Morrison, or either of them, or by their agents, heirs, administrators, grantees or assigns for use on the lands now owned by them, except for

stock water after October 15th and prior to April 15th of any year

"Since all diversions by petitioners and their predecessors in excess of eight cubic feet of water per second of time were a subterfuge and not in good faith, and since not more than eight cubic feet of water per second of time could be beneficially used, all water in excess of said eight cubic feet of water per second of time has been totally and completely abandoned.

"Junior appropriators, who appropriated this excess water have a vested right to have the conditions on the river remain as they were when their appropriations were made.

"The Court is aware that as the City of Fort Collins continues to grow, additional water will be needed for its inhabitants. However, need is not the matter to be considered in a change of point of diversion. The element to be considered under the statutes is injury to junior appropriators. No change may be allowed unless injury can be obviated by the imposition of conditions. In this case, the conditions listed are essential to protect junior appropriators against substantial injury.

"To prevent injury to junior appropriators, no call for water under said priority may be made at the new point of diversion during any period from October 16th to April 14th, inclusive. No call for water under said priority for use on the farm lands of petitioners or elsewhere may be made, except as allowed at the new point of diversion, except water for livestock purposes from October 16th to April 14th, inclusive. If any one or more of said conditions is not imposed there will be injury to junior appropriators on the river, and this is the controlling factor."

There is competent evidence in the record before us to sustain all the findings of fact entered by the trial court. The evidence which was admitted over objection was properly received. Upon motion made by plaintiffs the decree of the court was amended to include a pro-

104

vision under which, in the event of an affirmance of the judgment, plaintiffs were given ninety days following final disposition of the case in this court within which to file an election to proceed with the change in the point of diversion on the conditions imposed by the judgment of the trial court.

The grounds on which plaintiffs seeks reversal are variously stated by their attorneys. In the briefs of counsel for Morrison and Hoffman it is argued that:

*First*: "There is no evidence to support the court's finding that ever since the entry of the original adjudication decree the owners thereof have not beneficially used in excess of eight cfs." and *Second:* "The trial court was without jurisdiction to decree abandonment of waters other than those transferred."

There is an abundance of evidence establishing the fact that at no time has an amount of water in excess of 8 c.f.s. been applied to beneficial use on the seventy-two acres of land involved. We doubt that it would be possible to apply even as much as 8 c.f.s. to beneficial use in agricultural pursuits on seventy-two acres of land. There is no merit to the first contention.

With reference to the second contention that the court lacked jurisdiction to decree abandonment of waters other than those sought to be transferred, we direct attention to the fact that from the very beginning no more than 8 c.f.s. was actually acquired by anyone for use on the Morrison-Hoffman land. The decree under which a priority of 31 c.f.s. was "adjudicated" to the Coy Ditch could only afford protection to the extent that said water, or fraction thereof, was actually applied to beneficial use. That adjudication decree in 1882 specifically provided:

"No part of this decree shall be taken or held as adjudging to any claimant * * * any right to take * * * any water from any natural stream except to be applied to the use for which said appropriation has been made, nor to allow any excessive user of water whatsoever, nor to

allow any diversion of water except for lawful and beneficial uses."

██ The trial court authorized transfer of the point of diversion of 8 c.f.s. Under specific findings made on competent evidence this volume of water was all that had ever ripened into a water right owned by Morrison and Hoffman. Actually they had contracted to sell to the city all the water which they could lawfully have used at any time. Under the specific findings of the trial court that no more than 8 c.f.s. was ever applied to beneficial use, that volume of water was the full measure of the water right acquired. An asserted water right which never came into being cannot be "abandoned," and the reference to "abandonment" in the trial court's judgment is an erroneous concept the result of which is harmless in this case.

No good purpose would be served in lengthening this opinion by detailed analyses of other contentions advanced by plaintiffs. Applicable and controlling rules concerning these contentions are to be found in the opinion of this court in *Farmers Highline Canal and Reservoir Company, et. al., v. City of Golden, et al.,* 129 Colo. 575, 272 P. (2d) 629. From that opinion we re-state basic concepts which require an affirmance of the judgment in the instant action. The case cited was one involving an application for change in the point of diversion of water. It was there held:

(1) Where the proceeding is conducted pursuant to statutory direction, " * * * all users of water affected by said proceeding were, in effect parties, and had full right to protect their rights had they so desired. * * * "

(2) "It is recognized that water is a property right, subject to sale and conveyance, and that under proper conditions not only may the point of diversion be changed, but likewise the manner of use. It further is recognized that such change may be permitted, by proper court decree, only in such instances as it is specifically shown that the rights of other users from the same

source are not injuriously affected by such change, and that the burden of proof thereof rests upon petitioner.

\* \* \*

(3) "There is absolutely no question that a decreed water right is valuable property; that it may be used, its use changed, its point of diversion relocated; and that a municipal corporation is not precluded from purchasing water rights previously used for agricultural purposes and thereafter devoting them to municipal uses, provided that no adverse affect be suffered by other users from the same stream, particularly those holding junior priorities.

(4) "Equally well established, as we have repeatedly held, is the principle that junior appropriators have vested rights in the continuation of stream conditions as they existed at the time of their respective appropriations, and that subsequent to such appropriations they may successfully resist all proposed changes in points of diversion and use of water from that source which in any way materially injures or adversely affects their rights. \* \* \*

(5) "All appropriations of water, and all decrees determining the respective rights of users, regardless of whether specific mention be made therein, are subject to all constitutional and statutory provisions and restrictions designed for the protection of junior appropriators from the same stream. \* \* \* "

We think the following language contained in the opinion in the case cited is pertinent to the issues in the instant case:

"Petitioner contends, however, that it is entirely within the right of an approriator of water to enlarge upon his use, and now that the City of Golden is the owner, it may enlarge upon the use to the extent of the entire decree. Counsel for petitioner here confuse two altogether different principles. This doctrine even on behalf of an original appropriator, may be applied only to the extent of use contemplated at the time of appro-

priation. It has no application whatever to a situation where a decree is sought for change of point of diversion or use. There the right is strictly limited to the extent of former actual usage. 'The right to change the point of diversion is, of course, nontheless a qualified right because petitioner acquired it by purchase.' *Fort Lyon Co. v. Rocky Ford Co.*, 79 Colo. 511, 515, 246 Pac. 781."

\* \* \*

" \* : \* \* Where the entire amount fixed by the decree was reasonably required in the proper irrigation of the lands to which first applied, then the whole priority properly may be changed for similar usage; but where such irrigation did not require the entire volume of the decree, then only that portion may be changed which previously had been necessary for proper irrigation. It is not a question of whether the amount of water decreed was adequate, but whether it was excessive. The extent of needed use in original location is the criterion in considering change of point of diversion. This, of course, is premised upon the assumption that whatever of the decreed water was not properly used remained in the stream.

\* \* \*

"Where it appears that the change sought to be made will result in depletion to the source of supply and result in injury to junior appropriators therefrom, the decree should contain such conditions as are proper to counteract the loss, and should be denied only in such instances as where it is impossible to impose reasonable conditions to effectuate this purpose."

We conclude that the trial court determined the issues in the instant case in a manner consistent with the foregoing principles, and find no error requiring a reversal of the judgment. There was no abuse of discretion in the assessment of costs.

The judgment accordingly is affirmed.