512 P.2d 1166 (1973)
SCHOOL DISTRICT #11, JOINT COUNTIES OF ARCHULETA AND LA PLATA, the State of Colorado, and Floyd E. Harris, Plaintiffs-Appellees,
v.
Clayborn UMBERFIELD and the Colorado Civil Rights Commission, Defendants-Appellants.
No. 72-201.
Colorado Court of Appeals, Div. I.
May 30, 1973.
Rehearing Denied June 19, 1973.
Certiorari Granted August 20, 1973.
*1167 Hamilton, Sherman, Hamilton & Shand, P. C., E. B. Hamilton, Durango, for plaintiffs-appellees.
Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., Jeffrey I. Sandman, Asst. Atty. Gen., Denver, for defendants-appellants.
Selected for Official Publication.
SMITH, Judge.
A tenured teacher was dismissed by his school district upon recommendation of a statutory teacher tenure panel. Subsequently, the Colorado Civil Rights Commission ordered the teacher reinstated. The district court reversed the commission's order on the basis that the teacher was estopped from proceeding before the commission and that the commission's conclusion of religious discrimination was not supported by evidentiary findings. The commission appeals, and we affirm.
Clayborn Umberfield, an employee of the district since 1954, executed his employment contract with School District 11 for the school year of 1969 to 1970, after which he became a practicing member of the World Wide Church of God. The World Wide Church of God requires of its membership strict observance of certain holy days. This observance requires the attendance of all members at assemblies held at certain locations throughout the United States at different times during the year. In the summer of 1969 Mr. Umberfield requested permission to be absent from work from September 26, 1969, through October 3, 1969. The school board denied this request. Mr. Umberfield, however, was absent on these days and was thereafter charged with breach of contract and neglect of teaching duties by Floyd E. Harris, Superintendent of School District 11. Defendant requested a hearing under the Teacher Employment Dismissal Tenure Act, 1967 Perm.Supp., C.R.S.1963, 123-18-1 et seq. No hearing, however, was held and the charges against Mr. Umberfield were withdrawn by Mr. Harris.
Mr. Umberfield thereafter requested permission to be absent on April 21, 1970. Permission was again denied and Mr. Umberfield was absent. Mr. Umberfield was again charged by Mr. Harris with breach of contract and neglect of his duties. By letter of May 12, 1970, Mr. Umberfield was notified of the charges and his right to a hearing. On May 29, 1970, a hearing was held before a panel of three attorneys in compliance with 1967 Perm.Supp., C.R.S.1963, XXX-XX-XX. The panel recommended that Mr. Umberfield be dismissed. Subsequently, the Board of Education pursuant to the recommendation of the panel dismissed Mr. Umberfield. Mr. Umberfield filed no petition for review of these proceedings in district court as authorized by 1967 Perm.Supp., C.R.S.1963, XXX-XX-XX(11).
On August 11, 1970, however, Mr. Umberfield filed a complaint with the Colorado Civil Rights Commission. He alleged that Mr. Harris and the school district had violated the Colorado Antidiscrimination Act, C.R.S.1963, 80-21-1 et seq. A full hearing was held before a hearing examiner of the commission, who entered findings and rendered a decision which found that no violation of the act had been committed by the school district. The commission, after reviewing a transcript of the hearing, accepted and adopted the hearing examiner's findings of fact, but reversed his conclusions of law. The commission concluded that an unfair employment practice had been committed in violation of 1969 Perm.Supp., C.R.S.1963, 80-21-6, and ordered Mr. Umberfield reinstated in his teaching position.
Mr. Harris and the school district filed an action in the district court seeking to have this decision overturned and order vacated. The trial court ruled that, since Mr. Umberfield did not seek judicial review of the decision of the school board, his dismissal by the school district was not subject to collateral attack in another forum or before another agency. In addition, the court determined that the Civil Rights Commission's conclusion that Mr. Umberfield's discharge was a discriminatory and unfair employment practice in violation *1168 of 1969 Perm.Supp., C.R.S.1963, 80-21-6, was not supported by evidentiary findings. The order of the Civil Rights Commission was therefore reversed.

I
The commission argues that under 1967 Perm.Supp., C.R.S.1963, XXX-XX-XX, the sole function of the tenure panel was to determine whether Mr. Umberfield had neglected his duties as a teacher or violated his contract with the school district. The school district argues that the tenure panel not only had the statutory right and duty to consider Mr. Umberfield's claims of religious discrimination but did in fact do so and found them to be without merit. The issue thus framed is whether the hearing before the tenure panel is of such a nature that the doctrine of res judicata should be applied to prevent a tenured teacher, who has been dismissed after a hearing before a tenure panel from invoking the jurisdiction of the Civil Rights Commission concerning the dismissal.
The Colorado Antidiscrimination Act, C.R.S.1963, 80-21-1 et seq. defines certain types of employer behavior as a "discriminatory and unfair employment practice," and provides certain rights and remedies relating thereto which did not exist in Colorado prior to passage of the act. The act also created an administrative forum to investigate and to make the initial determination as to whether such practices had or were occurring and to enter remedial orders. All such administrative actions are subject to judicial review. The rights, remedies and procedures which arise by virtue of the act are in addition to and do not supplant or abrogate any rights or remedies which exist by virtue of the United States, or state constitutions, federal statutes or statutes of the State of Colorado, or which exist under the common law. Nor does the act preclude the creation of additional or other rights and remedies relative to discrimination on the basis of race, creed, color, national origin, ancestry, or sex as the legislature may in the future create or the courts define.
The Colorado Antidiscrimination Act does not declare or even imply that a "discriminatory or unfair employment practice" is actionable per se in courts of law. Instead, the statute vests the Civil Rights Commission with the power to determine, initially, whether the act has been violated. The statute imposes upon the commission the duty of receiving, investigating and passing upon complaints alleging the commission or existence of a "discriminatory or unfair employment practice" as well as the responsibility for entering remedial orders. C.R.S.1963, 80-21-5. No other remedy is provided by this statute for the commission of such a "practice." The way in which an alleged "discriminatory or unfair employment practice", as defined in the act, comes before the district court, or this court, is by review of the Civil Rights Commission's proceedings as provided in C.R.S.1963, 80-21-8. Hence, a review upon the record of a tenure panel hearing pursuant to 1967 Perm.Supp., C.R.S.1963, XXX-XX-XX(11), by the district court does not review whether a "discriminatory or unfair employment practice", as defined in the act, has occurred inasmuch as this issue is not one for the tenure panel to determine. Since a review of Mr. Umberfield's tenure panel hearing does not involve determination of the question of whether the school district committed a "discriminatory or unfair employment practice" under the act by discharging Mr. Umberfield, he was entitled to initiate a complaint before the Civil Rights Commission for a determination of this question, subject to judicial review. The district court erred in ruling to the contrary.

II
Although we do not agree that Mr. Umberfield was estopped from proceeding before the Civil Rights Commission, we do agree with the district court that the factual *1169 findings of the commission do not support its determination.
The Civil Rights Commission's hearing officer supported his conclusion that the school district had not committed a "discriminatory or unfair labor practice" by finding as follows:
"There was evidence adduced and reason dictates that in a small school system, a regularly employed teacher is far superior to the substitute teachers, and that even though lesson plans are prepared in advance, there is no substitute for a teacher who has been with the class throughout the year, and that the students will not progress as well under the substitute teacher as under the regularly employed teacher.
It was further adduced at the trial that other teachers regularly employed by the school board, were disrupted by the fact that the Complainant was able to violate his employment contract so blatantly."
The Civil Rights Commission adopted without change the hearing officer's findings of fact as their own, but reversed his conclusion. The findings of the hearing officer were supported by substantial evidence, and were therefore binding on the district court, as they are on us. C.R.S.1963, 80-21-8(6). Those findings clearly support the hearing officer's conclusion that Mr. Umberfield's dismissal did not constitute a "discriminatory or unfair labor practice." They clearly do not support the commission's conclusion to the contrary. Thus, the trial court correctly set aside the commission's order.
Judgment affirmed.
ENOCH, J., concurs.
COYTE, J., specially concurring.
COYTE, Judge (specially concurring):
I agree that the judgment of the trial court should be affirmed. I also agree that the trial court correctly ruled that there was no discriminatory or unfair labor practice exercised by the school board in the discharging of Mr. Umberfield. However, I disagree with the legal conclusions contained in the majority opinion to the effect that the trial court or this court may only consider alleged discrimination or unfair employment practices by review of proceedings of the Civil Rights Commission.
I further disagree with the statement that the district court could not review the findings of a tenure panel on the discrimination issue because the district court cannot determine whether a discriminatory or unfair practice has occurred. I would hold that, since there was no appeal from the decision of the school board to discharge Mr. Umberfield, he was barred by the operation of the doctrine of res judicata from relitigating his claim before the Civil Rights Commission that his discharge was discriminatory.