## No. C-409

**Clayborn Umberfield and The Colorado Civil Rights Commission v. School District No. 11, Joint Counties of Archuleta and La Plata, The State of Colorado and Floyd E. Harris**

(522 P.2d 730)

Decided May 28, 1974.                    Rehearing denied June 17, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Jeffrey I. Sandman, Assistant, for petitioners.

Hamilton, Sherman, Hamilton & Shand, P.C., E. B. Hamilton, for respondents.

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review the decision of the Court of Appeals in *School District No. 11 v. Umberfield,* 32 Colo. App. 306, 512 P.2d 1166 (1973), with respect to a teacher's dismissal for cause.

Petitioner, Clayborn Umberfield, had been employed as an English teacher by School District No. 11 since 1954. After executing his contract for the 1969-70 school year he became a practicing member of the World Wide Church of God. The World Wide Church of God mandates that each member observe certain holy days by church attendance in order to maintain active status in the church.

During the summer of 1969 Umberfield approached Floyd Harris, the Superintendent of School District No. 11, and requested he be given time off to celebrate the holy days of the World Wide Church of God including September 26, 1969, and from September 29 to October 3, 1969. This time off was in addition to the leave provided for in his contract. Umberfield's request was considered and denied by the board of education.

On September 24, 1969, Harris advised Umberfield that the board of education expected him to fulfill his teaching duties as called for in his contract. Umberfield told the superintendent that it was imperative for him to be absent from his teaching duties on the forthcoming holy days. Umberfield did, in fact, attend church meetings on the above mentioned days, and thus missed six days of teaching. He went to Texas and to California by church assignment to fulfill his obligation.

The board of education gave Umberfield written notice of its intent to dismiss him for cause pursuant to "The Teacher

Employment, Dismissal, and Tenure Act of 1967", 1967 Perm. Supp., C.R.S. 1963, 123-18-1, *et seq.* We shall hereinafter refer to this Act as the Teacher Tenure Act. These charges were subsequently withdrawn by the school board because the dismissal hearing had not been held within twenty-five days after the third member of the panel had been selected as required by 1967 Perm. Supp., C.R.S. 1963, 123-18-17(5).

Umberfield, in order to attend certain other Holy Day church services, did not teach on April 21 and April 27, 1970, in violation of the terms of his contract. Prior to each of his absences, Harris advised Umberfield that the school board expected him to teach on the specified days.

The school board again gave written notice to Umberfield on May 12, 1970, that charges had been filed against him for neglect of duty and insubordination under the terms of the Teacher Tenure Act, *supra.* A full adversary hearing was held on May 29, 1970, at which Umberfield was represented by counsel. The Teacher Tenure Panel recommended that Umberfield be dismissed. The school board adopted the panel's recommendation and terminated Umberfield's contract. Umberfield, however, did not seek judicial review of this decision, as provided for in the Teacher Tenure Act. 1967 Perm. Supp., C.R.S. 1963, 123-18-17(11).

Umberfield subsequently filed a complaint with the Colorado Civil Rights Commission charging that he had been dismissed from his employment because of his religious beliefs in violation of the Colorado Antidiscrimination Act. 1969 Perm. Supp., C.R.S. 1963, 80-21-6(2). A hearing examiner appointed by the Civil Rights Commission then held a hearing. Upon consideration of essentially the same evidence as was presented to the Teacher Tenure Panel, he found that Umberfield's dismissal was for neglect of duty and insubordination and not because of his religious beliefs. Thus, he concluded, the dismissal was not a discriminatory or unfair employment practice. The Civil Rights Commission adopted in toto the hearing examiner's findings of fact, but

reversed his decision and held that Umberfield was discharged because of his religious beliefs in violation of section 80-21-6(2).

The school district then sought review of the Commission's order in the district court for LaPlata County. C.R.S. 1963, 80-21-8. The district court reversed the order of the Commission, holding that (1) since Umberfield did not seek judicial review of the decision of the Teacher Tenure Panel, his dismissal was not subject to collateral attack in another forum or before another agency, and (2) that the Commission's ruling that the dismissal of Umberfield was discriminatory and an unfair employment practice was not supported by its evidentiary findings.

The Court of Appeals, although affirming the judgment of the district court, disagreed with its holding that Umberfield was estopped from proceeding before the Civil Rights Commission because of the prior hearing before the Teacher Tenure Panel. We granted certiorari primarily to review the correctness of the Court of Appeals ruling that the doctrine of *res judicata* did not apply. We affirm the judgment of the Court of Appeals, but disagree with its holding on the doctrine of *res judicata.*

The school district argues that Umberfield had his day in court before the Teacher Tenure Panel where he fully set forth his religious justifications for not teaching on the days in question. It contends that the adverse determination, which Umberfield did not appeal, is binding on the Civil Rights Commission by virtue of the doctrine of *res judicata.*

■ While the doctrines of *res judicata* and collateral estoppel were developed in the context of judicial proceedings, it is now well accepted that in a proper case they may be applied to administrative proceedings as well. *See United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *International Union of Mine Workers, Local 15 v. Eagle-Picher Mining and Smelting Co.,* 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649 (1945); *Fairmont Alum. Co. v. Commissioner,* 222 F.2d 622

▐▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▐

(4th Cir. 1955), *cert. denied,* 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955). *See* generally 2 *K. Davis, Administrative Law Treatise* § 18.01, et seq.; 67 *Mich. L. Rev.* 824.

▉ The exposition of Mr. Justice Lee in *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973), defines and distinguishes the doctrines of *res judicata* and collateral estoppel:

"Res judicata in the strict sense refers to 'claim preclusion.' Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 *Iowa L.Rev.* 27-28 (1964). The doctrine holds that an existing judgment is conclusive of the rights of the parties in any subsequent suit on the same claim. It bars relitigation not only of all issues actually decided, but of all issues that might have been decided. It requires an identity of parties or their privies (Restatement, Judgments § § 83-92 (1942)), as it would be unfair to preclude a party from litigating an issue merely because he could have litigated it against a different party.

"Collateral estoppel, on the other hand, refers to 'issue preclusion.' The doctrine holds that the final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit. *See Hudson v. Western Oil Fields,* 150 Colo. 456, 374 P.2d 403; *Sylvester v. J. I. Case Co.,* 21 Colo. App. 464, 122 P. 62. Collateral estoppel is broader than res judicata in that it applies to a cause of action different from that involved in the original controversy. It is narrower, however, in that it does not apply to matters which could have been litigated but were not. *See generally,* Barlock, *Res Judicata — The Preclusive Effect of Collateral Estoppel,* 35 *Dicta* 186 (1958); Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties,* 68 *Colum. L. Rev.* 1457 (1968)."

Both doctrines assume the existence of subject matter jurisdiction of the adjudicative body whose order or judgment is pleaded as *res judicata* or collateral estoppel. In the instant case, as it shall appear, we are dealing with "claim preclusion," and hence *res judicata.*

▉ The doctrine of *res judicata* is based on the necessity

for finality in litigation. It prevents a party who has had a fair trial on a claim from relitigating it in another forum. *Bernhard v. Bank of America,* 19 Cal. 2d 807, 122 P.2d 892 (1942) and authorities cited therein.

■ The Teacher Tenure Act, 1967 Perm. Supp., C.R.S. 1963, 123-18-1, *et seq.,* sets up a procedural scheme for the dismissal of tenured teachers. It provides for a full adversary hearing wherein a teacher, after notice of the charges against him, is given the opportunity to challenge those charges. The teacher has the right to counsel, to present all evidence bearing on the reasons for the proposed dismissal, the right to cross-examine witnesses, and the right to discover and put in evidence any school district records. 1967 Perm. Supp., C.R.S. 1963, 123-18-17(7). Given these procedural safeguards, it is readily apparent that Umberfield was afforded due process of law in his hearing before the Teacher Tenure Panel. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Slochower v. Board of Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed.2d 692 (1956).

■ Significantly, the legislature provided for broad judicial review of any order of the board of education under the act. The judicial review section, 1969 Perm. Supp., C.R.S. 1963, 3-16-5(7), provides in pertinent part:

"(7) . . . If it [the district court] finds that the agency action is arbitrary or capricious, *a denial of statutory right, contrary to constitutional right, power, privilege or immunity,* in excess of statutory jurisdiction, authority, purposes or limitations, . . . an abuse or clearly unwarranted exercise of discretion, *based on findings of fact that are clearly erroneous on the whole record, unsupported by the evidence, or otherwise contrary to law,* then the court shall hold unlawful and set aside the agency action and shall restrain the enforcement of the order or rule under review, . . . and afford such other relief as may be appropriate . . . . In all cases under review *the court shall determine all questions of law*

*and interpret the statutory and constitutional provisions involved* and shall apply such interpretation to the facts duly found or established." (Emphasis added.)

Thus, although the Teacher Tenure Panel is empowered to recommend only that the teachers be retained or that the teachers be dismissed, 123-18-17(8)(a), in reaching those recommendations it is clear that they may consider the denial of statutory and constitutional rights. Otherwise the teacher's right to present *all the evidence* bearing upon the reasons for his proposed dismissal and the broad judicial review of the school board's action based upon the panel's recommendation would be rendered nugatory. The proceedings under the Teacher Tenure Act and subsequent judicial review give a tenured teacher contesting his dismissal an opportunity to raise all defenses, judicial, statutory, or constitutional available to him, before a panel with plenary power to consider and accept or reject such claims.

■ The Civil Rights Commission, on the other hand, has a more limited function in the area of discrimination in employment. Their sole function is to make a finding of *fact* as to whether a statutory employer has acted to discriminate against an employee "because of race, creed, color, sex, national origin or ancestry." 1969 Perm. Supp., C.R.S. 1963, 80-21-6(2). *School District No. 11 v. Howell,* 33 Colo. App. 57, 517 P.2d 422 (1973). A district court on review is bound by these findings of fact if they are supported by substantial evidence in the record. C.R.S. 1963, 80-21-8(6).

The school district sought to discharge Umberfield because of neglect of duty and insubordination. Both of these grounds for dismissal grew out of his rigid adherence to the demands of his newly acquired religious faith. In his response to the charges Umberfield, through his attorney, at the outset of the hearing before the tenure panel made the following statement:

"The teacher admits that he was absent from school on September the 28th, the 29th, and the 30th, and on October 1st, 2nd, and 3rd, 1969, and also on April the 21st, 1970, but specifically and expressly denies that said absences were

without justification. The teacher admits that on or about April the 11th, 1969, a request was made of the herein mentioned Board of Education for leave for the days involved, and admits that the Board denied such request. But specifically denies that such leave was unjustifiable, and expressly alleges that the action of the Board in denying him the right to be absent after informing said Board that such request was for the purpose of exercising the religion of his choice, was an unwarranted, unlawful, unconstitutional, and arbitrary action by the Board in direct violation of the rights guaranteed all citizens, including this teacher, under the Constitutions of the United States and the State of Colorado."

The claim of discriminatory action on the part of the board was reiterated throughout the hearing before the panel. That the panel considered the claim is evident from its finding,

"that the action of the board of education of School District 11 Joint was reasonable and not in violation of the teacher's right to the free exercise of the religion of his choice."[1]

To the extent that Umberfield raised the issue of discrimination it was considered and rejected on the merits by the Teacher Tenure Panel. Umberfield did not raise the issue of whether his proposed dismissal would constitute a violation of the Colorado Antidiscrimination Statute, 1969 Perm. Supp., C.R.S. 1963, 80-21-6(2), although, as we observed above, both the panel and a reviewing court could consider such a claim.

Umberfield did not seek judicial review of the adverse recommendation of the Teacher Tenure Panel and his subsequent dismissal in the school board. Instead he instituted a new proceeding before the Civil Rights Commission which is before us now. Because Umberfield had a full adversary hearing before the Teacher Tenure Panel which had

---

[1] The written findings of the Teacher Tenure Panel do not appear in the record on appeal. However, counsel for the school board read this statement into the record without objection at the hearing before the Civil Rights Commission Hearing Examiner.

the power to determine all his claims of religious discrimination, we hold that the doctrine of *res judicata* operates as a bar to the relitigation of issues which Umberfield raised or could have raised in the hearing before that panel and on judicial review. *Pomeroy v. Waitkus, supra; Brennan v. Grover,* `158 Colo. 66, 404 P.2d 544 (1965); *Hudson v. Western Oil Fields,* 150 Colo. 456, 374 P.2d 403 (1962); *Green v. Chaffee Ditch Company,* 150 Colo. 91, 371 P.2d 775 (1962). To hold otherwise could result in an anomalous situation where the same reviewing court would be compelled to affirm opposite results of the two administrative bodies. Assuming credible and conflicting evidence, a school board might dismiss a tenured teacher and a reviewing district court could uphold the dismissal under C.R.S. 1963, 3-16-5. The same district court, in reviewing a subsequently filed proceeding before the Civil Rights Commission, would be bound to uphold a contrary result if supported by substantial evidence. C.R.S. 1963, 80-21-8(6). To avoid this judicial inconsistency, the doctrine of *res judicata* must be applied to the subsequently filed proceeding before the Civil Rights Commission.

Because of the decision of the Teacher Tenure Panel, which precluded the Civil Rights Commission proceedings, we need not reach the other issues raised by the petitioners.

Accordingly, the judgment of the Court of Appeals, as modified by this opinion, is affirmed.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. CHIEF JUSTICE dissenting:

I must respectfully dissent. In my view, the Legislature set up a statutory scheme wherein all persons employed by "employers" as defined in the Colorado Antidiscrimination Act, 1969 Perm. Supp., C.R.S. 1963, Chapter 80-21-1, *et seq,* were entitled to have their claims of improper discrimination in their employment determined by a body with expertise in that field. "Employer" is defined in the Act as including school districts, *id.,* 80-21-2(5). There is no constitutional bar to such inclusion, as was present in *State of Colorado et al. v. Colorado Civil Rights Commission in re McAllister,* 185 Colo.

42, 521 P.2d 908, announced April 29, 1974. Under such circumstances, I do not believe the Legislature intended, nor does the common law require, that a statutory teacher tenure panel, none of whom are required to be persons with expertise in the area of unlawful discrimination, should deprive the complaining teacher of his right to a hearing by the Civil Rights Commission on the specific issue of such unlawful discrimination in employment by his school district.

I, therefore, agree with the decision of the Court of Appeals.