**MID–CONTINENT RESOURCES, INC., a Delaware corporation, Plaintiff–Appellee,**

v.

**Thomas P. LOOBY, Director of Health & Environmental Protection, Colorado Department of Health; Division of Administration, Colorado Department of Health; Water Quality Control Division, Colorado Department of Health; Department of Health, State of Colorado, an agency of the State of Colorado, Defendants–Appellants.**

No. 93CA0297.

Colorado Court of Appeals, Div. I.

June 30, 1994.

Delaney & Balcomb, P.C., Edward Mulhall, Jr., Glenwood Springs, for plaintiff-appellee.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Amelia S. Whiting, Asst. Atty. Gen., Denver, for defendants-appellants.

Opinion by Judge RULAND.

Following an evidentiary hearing, a hearing officer determined that plaintiff, Mid–Continent Resources, Inc., violated a permit issued by defendant, Water Quality Control Division of the Colorado Department of Health. On review, this order was affirmed by the Colorado Department of Health (Department).

In response to Mid–Continent's complaint for judicial review, the district court vacated the order. The Department appeals, and we reverse and remand with directions.

The relevant facts are not in dispute. Mid–Continent operated a coal mining facility. In order to conduct the mining operation, Mid–Continent applied for and obtained a permit from the Water Quality Control Division that authorized Mid–Continent to discharge pollutants from specific points referred to as "outfalls" into a stream so long as the pollutants did not exceed specified levels.

Another permit was required and obtained from the Mined Land Reclamation Division of the Colorado Department of Natural Resources. This permit authorized Mid–Continent to extract coal and reclaim the mining site subject to certain conditions including measures to avoid adverse impact on water quality of the stream.

The Water Quality Control Division and the Mined Land Reclamation Division issued separate notices on the same date alleging violations by Mid–Continent of each permit. The Water Quality Control Division notice, as amended, charged Mid–Continent with discharges from Outfall 016 that violated the concentration limitations for three different pollutants: iron, oil and grease, and total suspended solids.

The Mined Land Reclamation Division notice alleged that Mid–Continent had failed to maintain adequate water treatment facilities, sediment control measures, and three specific sediment ponds that resulted in discharges from Outfall 016 which failed to meet applicable state regulations and permit limitations.

Mid–Continent entered into a settlement agreement with Mined Land Reclamation Division to resolve the violation of that permit. The agreement established the dollar amount of a fine for the violation and the time for payment. Thereafter and in response to the alleged violation of the Water Quality Control Division permit, Mid–Continent asserted, among other things, that proceedings to establish a violation of this permit were barred by the doctrine of *res judicata*.

The hearing officer found that Mid–Continent had violated the terms of the permit and rejected plaintiff's *res judicata* defense. Specifically, the officer found that Mid–Continent's discharge of iron effluent exceeded the permit limitation on two specific days, that the discharge of oil and grease exceeded the permit limitation on one day, and that the discharge of suspended solids exceeded the permit limitation for a period of 29 consecutive days. These findings were affirmed by the Executive Director of the Colorado Department of Health.

The district court concluded that the administrative record contained substantial, competent evidence to support the hearing officer's finding that the Water Quality Control Division permit had been violated. The district court also concluded, however, that the settlement of the Mined Land Reclamation Division permit violation barred prosecution of the Water Quality Control Division permit violation under the doctrine of *res judicata*.

In concluding that the doctrine should be applied, the court found identity of parties based upon the fact that both the Mined Land Reclamation Division and the Water Quality Control Division represent the state of Colorado. The court reasoned that the subject matter of each violation notice was the same, namely, improper discharge of sediments into the stream during the same general time frame.

In this regard, the court noted that each agency shared the benefit of the water samples taken by the other as well as the investigative function. Finally, the court concluded that the policy objective of the doctrine was served because the prosecution of essentially the same violations by each agency exposed

Mid–Continent and the state to the unjustifiable cost of dual litigation for the same activity.

The court rejected the Department's contention that the doctrine was inapplicable because two separate agencies with separate functions and authority were prosecuting permit violations. The court concluded that, insofar as mining operations are concerned, both agencies have essentially the same statutory responsibility for maintaining water quality.

I

■ The Department contends that the district court erred in determining that the doctrine of *res judicata* was applicable under the circumstances of this case. Specifically, the Department argues that the settlement agreement with Mined Land Reclamation Division does not constitute a final adjudication for purposes of the doctrine. In the alternative, the Department argues that the agreement does not by its terms resolve any violation of the Water Quality Control Division permit. Finally, the Department argues that the Mined Land Reclamation Division lacks jurisdiction to resolve the violation at issue. We agree with the last contention and thus do not address the others.

■ *Res judicata* is a judicial doctrine which provides that an existing final judgment in a court of competent jurisdiction is conclusive on the rights of the parties in any subsequent litigation on the same claim. *Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1973). As pertinent here, the doctrine applies when there is identity of subject matter, identity of claim, and identity of parties to the action. *Westminster v. Church*, 167 Colo. 1, 445 P.2d 52 (1968).

■ Although the doctrine of *res judicata* was developed in the context of judicial proceedings, in a proper case, the doctrine may be applied to administrative proceedings. *Umberfield v. School District No. 11*, 185 Colo. 165, 522 P.2d 730 (1974). In this context, an agency's decision is considered a final judgment on the merits only if the agency has acted in a quasi-judicial capacity

**1388**

and has properly resolved disputed issues of fact after the parties have been given an adequate opportunity to litigate the issues. *Montoya v. City of Colorado Springs,* 770 P.2d 1358 (Colo.App.1989); *see also Industrial Commission v. Moffat County School District RE No. 1,* 732 P.2d 616 (Colo.1987).

■ However, before the doctrine may be applied in administrative proceedings, it must appear that the first agency to address the claim in question had jurisdiction to resolve that claim. *See Peterkin v. Industrial Commission,* 698 P.2d 1353 (Colo.App.1985), *aff'd on other grounds,* 729 P.2d 977 (Colo. 1986) (doctrines of *res judicata* and collateral estoppel do not apply if agency lacks jurisdiction to grant relief requested); *see also Maryland Casualty Co. v. Messina,* 874 P.2d 1058 (Colo.1994) (doctrine of collateral estoppel does not apply if agency implicitly resolves a factual issue which is unnecessary for determination of claim before it).

As stated in Restatement (Second) of Judgments § 83 comment g (1982):

The qualifications and exceptions to the rule of claim preclusion have particular importance with respect to adjudications by administrative agencies. One important qualification has to do with the definition of 'claim' itself. In the context of civil actions in courts, the term 'claim' is broadly defined.... This broad definition reflects the fact that in modern practice judicial tribunals usually have comprehensive authority to adjudicate all contentions of fact and all legal theories that may arise from a transaction. Since a judicial tribunal has such comprehensive authority, a litigant may justly be required to avail himself of that authority and to assert in a single action all factual and legal contentions that might be made....

In contrast, the jurisdiction of administrative agencies is usually defined in terms of specified substantive legal provisions, for example, workers' compensation.... Since the tribunal's authority is delimited in substantive legal terms, the tribunal ordinarily lacks authority to adjudicate claims arising out of the transaction in question but based upon other substantive legal premises.... These limitations on

authority of the tribunal should carry corresponding limitations on scope of 'claim' for purposes of the rule of claim preclusion.

Here, the Mined Land Reclamation Division entered into a settlement agreement with Mid–Continent pursuant to § 34–33–123, C.R.S. (1984 Repl.Vol. 14) and its powers to enforce the terms and conditions of its permit. However, this statute does not grant the Mined Land Reclamation Division authority to enforce the Water Quality Control Division permit. *See* § 25–8–102(4), C.R.S. (1989 Repl.Vol. 11A).

Instead, with reference to the agencies charged with responsibility for water quality control, such as Mined Land Reclamation Division and the Water Quality Control Division, the General Assembly provided in § 25–8–202(7), C.R.S. (1989 Repl.Vol. 11A):

Activities subject to the jurisdiction of the implementing agencies that result in discharge to state waters shall be regulated as follows....

(a) The [Water Quality Control] commission shall be solely responsible for the adoption of water quality standards and classifications for state waters affected by such discharges. *Except as set forth in paragraph (b) of this subsection (7),* such classifications and standards shall be implemented by the implementing agencies, after consultation with the [Water Quality Control] division and the commission, through their own programs.

(b)(I) The [Water Quality Control] division shall be solely responsible for the issuance and enforcement of permits authorizing *point source discharges* to surface waters of the state affected by such discharges.

(II) Neither the commission nor the [Water Quality Control] division shall require permits for, or otherwise regulate, *other* activities subject to the jurisdiction of the implementing agencies.... (emphasis added)

Hence, we conclude that the doctrine of *res judicata* is not applicable here because only the Water Quality Control Division had statutory authority to determine whether Mid–Continent exceeded its permitted point

source discharges of the pollutants in question.

Contrary to Mid–Continent's contention, we do not view *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940), as supporting the district court's decision. In *Sunshine,* the Supreme Court held that the crucial determination is whether in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in question. However, as noted, Mined Land Reclamation Division lacked this authority with reference to point source discharge of pollutants.

Finally, we agree with the district court's conclusion that the prosecution of similar violations by separate agencies with the attendant cost, time, and expenditure of adjudicative resources does not comport with longstanding judicial policy. However, in our view, under the circumstances here, that issue is one for the General Assembly.

## II

We also reject Mid–Continent's alternative contention that a memorandum between the Water Quality Control Division and the Mined Land Reclamation Division in effect amended the language of the statutes relative to jurisdiction of permit violations. Even if we assume that the agencies had authority to enter into such an agreement, we conclude that there is record support for the hearing officer's finding that, although there were some common elements to the violations of the two permits, each was within the separate purview of the Mined Land Reclamation Division and the Water Quality Control Division as defined by the memorandum of understanding between the two agencies.

The judgment is reversed, and the cause is remanded to the district court to reinstate the Department's order.

METZGER, J., concurs.

VAN CISE,* J., dissents.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

VAN CISE, Judge, dissenting.

I respectfully dissent.

I agree with the trial court's October 24, 1992 order that the proceedings before Mined Land Reclamation Division (MLRD) and Water Quality Control Division (WQCD) "... involved the same parties (the State of Colorado), an identity of subject matter, identity of administrative claims for relief, and a final judgment of MLRD. Therefore, the decision of MLRD in the form of a Settlement Agreement ... is res judicata and bars the later WQCD proceedings. Therefore, the WQCD Findings, Ruling, and Order [entered October 10, 1990] are void."

I further agree with the trial court's analysis in which it stated:

"Res judicata applies to administrative proceedings, as well as traditional court suits.

While the doctrines of res judicata and collateral estoppel were developed in the context of judicial proceedings, it is now well settled that in a proper case they may be applied to administrative proceedings as well. *Umberfield v. School Dist. No. 11,* 185 Colo. 165, 522 P.2d 730, 732 (1974).

"Res judicata may therefore be applied to an administrative hearing, *Whelden v. Board of County Comn'rs,* 782 P.2d 853 (Colo.App. 1989), and it operates to bar a second action on the same claim as one litigated in a prior proceeding when 'there is a final judgment, identity of subject matter, claims for relief, and parties to the action.' *City & County of Denver v. Block 173,* 814 P.2d 824, 830 (Colo. 1991). Each of these standards is met here.

"First, there is a final judgment from MLRD. Its decision ... finally determined all the issues before it concerning unlawful discharges into the stream from Outfall No. 016. [Mid–Continent] [ (]MCR[) ] performed by paying a stipulated fine.

"Second, the subject matter of each proceeding was the same. Each proceeding dealt with unlawful discharges produced by mining operations from Outfall No. 016 into

and § 24–51–1105, C.R.S. (1993 Cum.Supp.)

the stream. Stripped of the cumbersome technical jargon, the subject matter of each agency's focus was the same. Each dealt with the same period of time, January and February, 1989; the same source of pollution, Outfall No. 016; the same general kinds of pollutants, TSS, TDS, oil, iron, and grease; the same damaged streams, Coal Creek and the Crystal River,; the same operator, MCR; and the same general types of acts of omission and commission by MCR.

"The claims for relief originating from each agency were the same. MLRD sought civil penalties, and abatement and a clean-up. WQCD also sought civil penalties. Both agencies considered each day of violation to be a separate offense, subjecting the operator to additional civil penalties. Therefore, the factual basis for seeking relief and the relief sought was virtually identical in each proceeding.

"The parties to each action were the same. For purposes of res judicata and collateral estoppel, there is privity between officers of the same government, and acts of one agency of the government are acts of another agency, in this limited context. In *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940), the United States Supreme Court emphasized the substance over the form of how a government acts, stating:

> Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different ... and parties nominally different may be, in legal effect, the same. There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the United States.

"This logical analysis of the federal bureaucracy applies with equal ... force to the State of Colorado. The Court therefore concludes that for purposes of res judicata, the party is the same in both proceedings. It is the State of Colorado; acting through the MLRD in the first action and the WQCD in the second action.

"The Attorney General ... argues that the bar of res judicata should be applied with caution and that public policy disfavors it. The Court does apply it with caution, and only on the facts adduced in this docket. The more focused public policy can be found in *Salida School Dist. R–32–J v. Morrison,* 732 P.2d 1160 (Colo.1987), where the Court explained the purpose of the doctrine as follows:

> The doctrines of collateral estoppel and res judicata 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'

"In the peculiar facts in this docket, each agency had the benefit of the samples taken by the other. They were sharing the investigative function. Each obviously had technical expertise; the technicalities each placed in their respective permits to MCR reveal this proficiency. Clearly, each agency knew what the other was doing in pursuing MCR. Their separate courses exposed MCR to the cost and aggravation of multiple punitive litigation for the same activity. The duality of prosecution did not conserve administrative agency resources, but instead spiraled costs to the State and MCR.

"There is nothing in the technical or scientific aspects of the proceedings which justifies dual prosecutions. There were winter discharges of liquids bearing suspended solids, oil, grease, and iron. The point of discharge was evident, the cause of the discharge was obvious, the cure was apparent, and the responsible party was conspicuous.

"The Defense also argues that the separate enabling statutes militate against the bar of res judicata. Although the technical vocabulary of the statutes differs, as applied to a coal mining operation near sensitive streams, they are remarkably similar in policy and approach. The Colorado Water Quality Control Act, C.R.S. § 25–8–101, et. seq., is designed to 'achieve the maximum practical degree of water quality in the waters of the state consistent with the welfare of the state,' recognizing that 'pollution of state waters may constitute a menace to public health and welfare,' C.R.S. § 25–8–102(1). The Act

also contains the public policy 'to conserve state waters and protect ... the quality thereof ... for domestic, agricultural, industrial, and recreational uses, and for other beneficial uses, taking into consideration the requirements of such uses....' C.R.S. § 25–8–102(2). The mining act carries forth the same general policies; it aims 'to protect society and the environment from the adverse effects of surface coal mining operations ...' C.R.S. § 34–33–102. In implementing the Act, MLRD must examine the 'probable consequences of the surface coal mining and reclamation operations, both on and off the mine site, with respect to the hydrologic regime and the quantity and quality of water in surface and groundwater systems, including dissolved and suspended solids....' C.R.S. § 34–33–110(1)($l$). Therefore, both statutes look closely to the degradation of water quality caused by coal mining operations, and one cannot discern any real difference in their policies in this area. In effect, WQCD and MLRD should be pursuing the same results. Their cooperation in obtaining samples for their respective prosecutions reinforces the similarity of their purposes and their policies. Applying res judicata will not therefore prevent the State of Colorado from enforcing the statutory policies of preventing water pollution from coal mining operations. It will, however, eliminate dual prosecutions and create the same cooperation in concluding their prosecutions that these agencies displayed in obtaining samples to begin them.

"Therefore, applied to the specific facts here, the application of res judicata comports with the relevant public policy goal in each agency's enabling legislation—nonpolluting mining operations. In addition, it will spare the operator of duplicitous prosecutions from overlapping agencies."

Accordingly, I would affirm the trial court's judgment.