AMERICANS UNITED FOR SEPARATION OF CHURCH AND
STATE v KENT COUNTY

Docket No. 44825. Submitted March 4, 1980, at Grand Rapids—De-
cided April 22, 1980. Leave to appeal denied, 409 Mich 935.
Kent County entered into labor-management contracts with dif-
ferent groups of its employees. The contracts provided that the
employees would be entitled to one-half day off with pay for
Good Friday and that the county building would be closed from
noon until three on Good Friday to allow employees to attend
religious services. Americans United for Separation of Church
and State and others filed a complaint seeking temporary and
permanent injunctions prohibiting defendant from closing its
facilities on Good Friday and paying its employees holiday pay
for that half-day. Plaintiffs alleged, and it was admitted, that
the cost for the half holiday would be $14,601.98. Kent Circuit
Court, George V. Boucher, J., granted summary judgment to
defendants. The court held that the Michigan legal holiday
statute did not mandate that public employers refrain from
bargaining away additional time off for employees or that
public buildings be kept open on all but statutorily listed
holidays. Plaintiffs appeal. The issues on appeal are whether
defendant's agreement to pay its employees one-half day holi-
day pay for Good Friday violates the legal holiday statute and
whether the collective bargaining agreements violate the reli-
gious liberty clause of the Michigan Constitution or the Estab-
lishment Clause of the First Amendment of the Federal Consti-
tution. *Held:*

The legal holiday statute does not prohibit a local governing
body from adding other days to the statutory list. Where a half-
holiday is the result of privately conducted negotiations autho-
rized by a statute which encourages collective bargaining there

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Sundays and Holidays § 7.
[2] 48 Am Jur 2d, Labor and Labor Relations §§ 1000-1002.
[3] 73 Am Jur 2d, Sundays and Holidays §§ 5, 10, 37.
Validity, under establishment of religion clause of federal or state
constitution, of making day of religious observance a legal holi-
day. 90 ALR3d 752.

is no violation of the religious liberty clause of the Michigan Constitution. The matter of holidays and holiday pay, in fact, is one of the mandatory subjects of bargaining. Furthermore, the collective bargaining agreements do not violate the freedom of religion provisions because the contents of the agreement do not compel a person to attend religious services or force the payment of taxes to support any minister, religious sect or society.

Affirmed.

1. STATUTES — HOLIDAYS — COMMERCIAL TRANSACTIONS.

The Michigan legal holiday statute does not prohibit a local governing body from adding other days to the statutory list; the primary purpose of the statute is to regulate commercial transactions occurring on certain designated days (MCL 435.101; MSA 18.861).

2. LABOR RELATIONS — HOLIDAYS — COLLECTIVE BARGAINING — STATUTES.

The matter of holidays and holiday pay is one of the mandatory subjects of bargaining (MCL 432.201 *et seq.;* MSA 17.455[1] *et seq.).*

3. LABOR RELATIONS — FREEDOM OF RELIGION — COLLECTIVE BARGAINING — CONSTITUTIONAL LAW.

Collective bargaining agreements providing for a half-day on Good Friday do not violate the freedom of religion provisions in the state constitution where the contents of the agreement do not compel a person to attend religious services or force the payment of taxes to support any minister, religious sect or society (Const 1963, art 1, § 4).

*Dilley & Dilley,* for plaintiffs.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Jack R. Clary* and *Sheila A. Kinney),* for defendant.

Before: ALLEN, P.J., and M. F. CAVANAGH and C. W. SIMON, JR.,* JJ.

ALLEN, P.J. Do provisions in collective bargaining agreements between the county and various

* Circuit judge, sitting on the Court of Appeals by assignment.

employee groups calling for the closing of public buildings on Good Friday afternoon and the payment of holiday pay violate the Michigan legal holiday act, MCL 435.101; MSA 18.861, the religious liberty clause of art I, § 4, of the Michigan Constitution of 1963, and the Establishment Clause of the United States Constitution? April 10, 1979, the trial court held not and granted summary judgment to defendant county under GCR 1963, 117.2(1). Plaintiffs appeal as of right.

Pursuant to the Michigan public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* Kent County entered into labor-management contracts with different groups of its employees. One contract covered county employees in the circuit court, probate court and district court. A second contract covered all other county employees except certain small groups excluded in § 1.1 of the agreement. Though the language varied somewhat, both contracts provided its employees are entitled to one-half day (or four hours) holiday pay on Good Friday and that the county building shall be closed from 12 noon to 3 p.m. on Good Friday to allow employees to attend religious services.

On Friday, March 9, 1979, five weeks prior to Good Friday, April 13, 1979, plaintiffs filed a complaint in circuit court for Kent County seeking temporary and permanent injunctions prohibiting defendant from closing its facilities on Good Friday and paying its employees holiday pay for that half-day. Plaintiffs alleged, and for purposes of this suit it is admitted, that the cost to the county for paying for said half-day holiday is $14,601.98. Defendant filed a motion for accelerated judgment alleging plaintiffs lacked capacity to bring suit and also filed a motion for summary judgment for

plaintiffs' failure to state a claim upon which relief could be granted. Hearing was held on March 13, 1979, and on April 10, 1979, three days prior to Good Friday 1979, summary judgment was granted to defendant. In an opinion filed subsequently, the trial court construed the Michigan legal holiday act as not mandating that public employers refrain from bargaining away additional time off for employees or that public buildings be kept open on all but the statutorily listed holidays. On appeal, plaintiffs do not oppose the right of any employee to observe Good Friday provided that public buildings remain open and provided further that the employee not be paid for such time off.

Plaintiffs' initial position is that defendant's agreement to pay its employees one-half day holiday pay for Good Friday violates the Michigan legal holiday statute, MCL 435.101; MSA 18.861. That statute designates certain days or half-days as public holidays *"for all purposes whatever as regards the presenting for payment or acceptance, and the protesting and giving notice of the dishonor of bills of exchange,* bank checks, and promissory notes, also for the holding of courts, except as otherwise provided in this act". (Emphasis supplied.) Good Friday is not mentioned in the statute. Nothing in the statute provides or even suggests that the Legislature intended the list of holidays to be exclusive, or prevents a local governing body from adding other days. The more reasonable interpretation of the statute is that it was primarily intended to regulate commercial transactions occurring on certain designated days.

That this statute does not prevent a local unit of government from adding other holidays is borne out by two opinions of the Attorney General, OAG 1952-1954, No. 1670, p 172 (June 9, 1953). At that

time the statute provided that county offices should be closed every Saturday from noon until midnight. Request was made of the Attorney General whether such language precluded the county board of supervisors from closing county offices on other days. The Attorney General held that the matter was "within the reasonable discretion of the board of supervisors". In OAG 1945-1946, No. 0-4672, p 698 (May 15, 1946), it was stated that the Lenawee County Board of Supervisors could close the county courthouse on Thursday afternoons in addition to Saturday afternoon. Accordingly, we hold that the collective bargaining agreements in the instant case did not violate the Michigan legal holiday statute.

We turn now to the more important issue of whether the collective bargaining agreements violate the religious liberty clause of Michigan Const 1963, art I, § 4, or the Establishment Clause of the First Amendment of the United States Constitution. Plaintiffs claim they do and cite as authority for such statement *Mandel v Hodges,* 54 Cal App 3d 596; 127 Cal Rptr 244 (1976), a case which plaintiffs state is "uniquely similar to the instant case on its facts". That case held that an order of the Governor of California closing state offices for three hours on Good Friday and granting state employees paid time off violated the Establishment Clause of the First Amendment and violated a similar provision in the state constitution. The court further held that the state statute which gave the Governor discretionary power to designate Good Friday from noon until three o'clock as a state holiday was unconstitutional under the Establishment Clause.

However, for purposes of the instant case, the precedential vitality of *Mandel* was dissipated just

one year later by *California School Employees Ass'n v Sequoia Union High School Dist,* 67 Cal App 3d 157; 136 Cal Rptr 594 (1977). In that case, the union representing school employees had negotiated with the school district under the provisions of a California statute similar to PERA. One of the provisions agreed upon was that Good Friday would be a holiday with pay. But when the decision in *Mandel, supra,* was released, the school district rescinded that part of the agreement. The union then sued to enforce the agreement. The court held in favor of the union largely on grounds that the agreement was the result of negotiations which the parties were empowered to engage in by state statute. *Mandel* was distinguished on grounds that there the statute empowered the Governor to designate Good Friday a holiday whereas, in the case before it, the statute did not in any way encourage a choice of Good Friday over any other holiday.

"The three-hour paid holiday to state employees on Good Friday in *Mandel* resulted from governmental action by the Governor pursuant to discretionary power vested in him by the Legislature in section 18025 of the Government Code. *(Mandel, supra,* 54 Cal App 3d at p 608, 127 Cal Rptr 244.) Here, the holiday arose out of negotiations between CSEA and the District as part of a wage and fringe benefit agreement for the 1974-1975 school year. The union representatives were empowered to engage in such negotiations by the meet and confer process under the Winton Act (see Ed Code, § 13080 *et seq.);* the board of trustees was vested with authority to approve the holidays chosen by CSEA under Education Code sections 5202, 5201.1 and 13656. Such statutes do not in any way encourage a choice of Good Friday over any other holiday. Thus, while the Legislature vested the board with the power to declare certain school holidays, the *discretionary* authority in requesting said days rested primarily with a non-governmental entity,

CSEA. The constitutional infirmity in *Mandel,* of granting the chief executive of the state with a discretionary power that was exercised in favor of a Christian, rather than a non-Christian holiday, is absent in the case at hand. *(Supra,* at p 617, 127 Cal Rptr 244). The state, through its highest elected official, is not in the position of advancing or inhibiting a particular religion. Under the facts of this case the effect, if any, on religious institutions is indirect and incidental and such an effect has never been held sufficient to warrant invalidation of state law.

"* * * The fact in the present case, that the entire day was a holiday, not just between 12 to 3, is by no means insignificant. Several secular considerations may have entered into the union representatives' choice of March 28 as a holiday rather than a non-Christian holiday. As noted above, in prior school years Good Friday fell within spring vacation as it was held the week before Easter. In the 1974-1975 year, spring vacation was held the week following Easter. Thus, the choice of March 28—the Friday before spring vacation —as a holiday, could have been for as mundane and secular a purpose as affording classified employees a longer spring vacation."

We find *Sequoia* determinative. In the instant case, the decision to make Good Friday a partial holiday was the result of privately conducted negotiations authorized under a statute encouraging collective bargaining. In fact, the matter of holidays and holiday pay is one of the mandatory subjects of bargaining. *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268, 278; 273 NW2d 21 (1978). Further, it is undisputed that during the negotiations in the instant case, the parties first agreed upon the number of holidays which would be included in the collective bargaining contract and then proceeded to negotiate which holidays would be selected, and if Good Friday had not been selected as

a half-holiday, then another half-day would have been selected in its place.[1] Thus, the selection of Good Friday in the collective bargaining agreement did not increase the cost to the taxpayers or the number of hours county facilities would not be open for business. See also Anno: *Validity under establishment of religion clause of federal or state constitution, of provision making day of religious observance a legal holiday,* 90 ALR3d 752.

We further find, that even though the holiday in the instant case is a half-day rather than a full day as in *Sequoia,* it nevertheless had the very practical effect of lengthening the Easter weekend. As such, and because nothing in the agreement encouraged employee attendance at Good Friday church services, we believe the agreements served a secular purpose of time off over the Easter holiday season.

Finally, we disagree with plaintiffs that the collective bargaining agreements violate the provisions of Michigan Const 1963, art I, § 4, which reads:

"Every person shall be at liberty to worship God according to the dictates of his own conscience. No person shall be compelled to attend, or, against his consent, to contribute to the erection or support of any place of religious worship, or to pay tithes, taxes or other rates for the support of any minister of the gospel or teacher of religion. No money shall be appropriated or drawn from the treasury for the benefit of any religious sect or society, theological or religious seminary; nor shall property belonging to the state be appropriated for any such purpose. The civil and political rights, privileges and capacities of no person shall

[1] Defendant's motion for summary judgment was based on the affidavit of the Kent County Controller who participated in the negotiations and whose affidavit set forth the facts stated above.

be diminished or enlarged on account of his religious belief."

Plaintiffs cite no cases in point, nor have we been able to find any. We fail to see how the contents of the agreements compel a person to attend religious service or force one to pay taxes for the support of any minister, religious sect or society.

Affirmed. No costs, a public question being involved.