**Brenda J. DePRIEST, Petitioner-Plaintiff-Appellant,**

v.

**Commissioner Sammie Lynn PUETT, of the Tennessee Department of Human Services; the Tennessee Department of Human Services, and the Tennessee Civil Service Commission, et al., Respondents-Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Jan. 16, 1984.

Permission to Appeal Denied by Supreme Court March 26, 1984.

---

Harvel M. Rogers, Jr., Nashville, for petitioner-plaintiff-appellant.

Claudius C. Smith, Asst. Atty. Gen., Nashville, for respondents-defendants-appellees.

HIGHERS, Judge.

This case is appealed from the Chancery Court in Davidson County which affirmed the action of the Civil Service Commission in denying the appellant's request for reinstatement to the Tennessee Department of Human Services (TDHS).

Brenda J. DePriest, the appellant, was employed by TDHS as a typist beginning in November of 1977. On September 18, 1978, she requested leave from October 13 through October 24 in order to attend a convocation of the Worldwide Church of God (WCG), of which she is a member. WCG observes certain days of rest and worship known as the Feast of Tabernacles and the Last Great Day which, in 1978, commenced on October 16 and continued through October 23. The additional days requested before and after these dates were for traveling time, because WCG observed these special days in only a few designated cities in the United States. The appellant's request for leave was denied on September 27, 1978, by her supervisor, Mrs. Elise Oliver. Mrs. Oliver testified that the denial was not based on religious reasons. To the contrary, she stated that the appellant was the only secretary in the office assigned to her particular responsibilities, that there was a backlog in her work, and that she had already expended her annual leave, her sick leave, and more than three days of special leave. Despite this denial of leave, the appellant proceeded to attend the holy day functions of her church and she was therefore absent for several consecutive workdays. Upon her return, the appellant received a letter dated October 23, 1978, from the Commissioner of TDHS informing her that she was being terminated from her employment. The appellant's husband, Jerry DePriest, who was also employed by TDHS and who also attended the WCG holy days without leave, received a similar letter of termination.

The DePriests appealed TDHS's action to the Civil Service Commission (the Commission) pursuant to T.C.A. § 8–3227 (now T.C.A. § 8–30–327), alleging religious discrimination and the failure on the part of TDHS to make reasonable accomodations to the beliefs of the DePriests. The DePriests asked to be restored to their jobs with back pay and interest. In their petitions the DePriests asked among other things that the Commission construe their adherence to their religious beliefs as "existent circumstances over which he [the employee] had no control," within the meaning of Regulation 1120–2–2.13(4). They asked that the Commission not construe their absence as a resignation so as to cut off their appeal to the Commission under the regulations which provide for appeals from demotion, dismissal, or suspension.

After a hearing on April 17, 1979, the Commission made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

(1) There was no testimony or evidence presented to show that the Department of Human Services denied leave to the Appellants because of their religious beliefs.

(2) Even though the Appellants knew well in advance of their desire to take leave, they made little or no effort to accrue an adequate annual leave balance to cover the time needed.

(3) They were absent from work without permission, knowing the requested time to be absent was not approved.

## CONCLUSIONS OF LAW

(1) The Civil Service Rules and Regulations in Section 1120–20.13(4) [sic], "Resignations," states:

"Any employee who is absent from duty for more than three consecutive business days without notice to his appointing authority or superior officer of the reason for such absence, and without securing permission to be on leave, or who fails to report for duty or to the immediate supervisor or the appointing authority within two business days after the expiration of any authorized leave of absence, shall be considered as having resigned not in good standing, provided there were not existent circumstances over which he had no control."

(2) The Civil Service Rules and Regulations 1120–2–2.14(4) "Appeals from Demotion or Separation" provides:

"A regular employee who has been demoted, dismissed, suspended or laid off, shall have the right to appeal to Commission . . ."

In the meantime, the DePriests had sought unemployment benefits which were denied on the basis that the DePriests voluntarily terminated their employment. This denial was affirmed in *DePriest v. Bible*, 653 S.W.2d 721 (Tenn.App.1980), *cert. denied*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981). In that opinion, the Court rejected the claimed violation of the appellant's First Amendment rights.

The appellant, without her husband, appealed the Commission's decision to the Chancery Court pursuant to T.C.A. § 4–5–117. Holding that the facts in *DePriest v. Bible, supra*, are identical to those here, the Chancellor found that "the petitioner has previously been afforded a forum with which to voice her grievance, and that the doctrine of res judicata applies," citing *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

On appeal to this Court, the appellant raises several issues. First, she contends that the standard of reasonable accomodation under 42 U.S.C. § 2000e et seq. applies both to T.C.A. § 8–3227 and § 4–21–101 *et seq.* Under this standard the employer must show that it attempted to make reasonable accommodation to an employee's religious beliefs or that such accommodation would place an undue hardship on the employer. Second, the appellant argues that the state never demonstrated an undue hardship. Third, the appellant objects to the ruling of the Commission to preclude her appeal by construing Regulation 1120–2–2.13(4) to the effect that she resigned rather than that she was dismissed. Fourth, the appellant argues that TDHS acted purposefully and intentionally in discriminating against her. Fifth, she contends that *DePriest v. Bible, supra*, is neither res judicata nor collateral estoppel in this case. Finally, she argues that the action of TDHS is a violation of state and federal constitutional provisions regarding an establishment of religion and the free exercise of religion.

■ Judicial review of a decision from an administrative agency is in the Chancery Court upon a standard of substantial and material evidence. *See* T.C.A. § 4–5–117; *Humana of Tennessee v. Tennessee Health Facilities Commission*, 551 S.W.2d 664 (Tenn.1977); *United Inter-Mountain Telephone Company v. Public Service Commission*, 555 S.W.2d 389 (Tenn.1977). The scope of review in the appellate court is the same as that which is afforded in the trial court, namely, "a narrow and statutorily prescribed review of the record made before the administrative agency." *Metropolitan Government of Nashville, Etc. v. Shacklett*, 554 S.W.2d 601, 604 (Tenn.1977). *See also* Harbison, *Tennessee Appellate Procedure and the Uniform Administrative Procedures Act*, 6 Memphis State L.Rev. 291 (1976).

■ In this case the Commission specifically found that there were meritorious, non-discriminatory grounds for the dismissal. Since we hold that there is substantial and material evidence to support this finding, we unhesitatingly reject appellant's

contention that any discrimination was purposeful or intentional. The Court in *DePriest v. Bible,* dealing with the same facts presented here in an action for unemployment benefits, noted that "appellant's disqualification does not derive solely from the practice of her religion. Mrs. DePriest had already chosen to accept employment at a time when she was aware of the provisions for annual, sick and special leave, and she did not seek any understanding with her employer at the time of her employment regarding her need for leave on special days of rest, and, furthermore she chose to use up all of her accumulated annual and sick leave before she decided unilaterally to leave her job behind in order to attend her days of rest in another state ..." 653 S.W.2d at 726.

■ We observe as the Court did in *DePriest v. Bible, supra,* that it apparently was not the intention of Mrs. DePriest to resign from her job by voluntarily missing days at work; however, we do not find that the treatment of her termination as a resignation was prejudicial to her rights because the Commission did not base its decision solely on that factor but also considered the substantive allegation of religious discrimination. If it was error to treat her separation as a resignation, it was harmless error in these circumstances. *See* T.C.A. § 4–5–322(i).

■ The appellant further relies upon the Establishment and Free Exercise Clauses of the First Amendment and, in so doing, somewhat confuses the parameters of the two. The alleged inducement to work rather than to worship, which appellant's brief cites as an Establishment Clause violation, would more nearly resemble a Free Exercise question. It is also argued that in allowing "majority religions" to observe holidays such as Christmas, Good Friday, and New Year's Day, while requiring members of the WCG to work on its days of rest, the state violates the Establishment Clause. The United States Supreme Court, however, has consistently upheld the observance of these holidays and Sunday closing laws against

challenges brought under the Establishment or Free Exercise Clauses. *See, e.g., McGowan v. State of Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 61 L.Ed.2d 393 (1961). In *Americans United for Separation of Church and State v. Kent,* 97 Mich.App. 72, 293 N.W.2d 723 (1980), a state employee contract which provided for days of leave for certain religious holidays was held not to violate the Establishment Clause. In fact, the extension of religious privileges may sometimes come closer to violation of the Establishment Clause than the disregard of them. In *Mandel v. Hodges,* 54 Cal.App.3d 596, 127 Cal.Rptr. 244 (1976), the Establishment Clause was violated by an order of the Governor closing state offices on Good Friday. In *Goodwin v. Metropolitan Board of Health,* 656 S.W.2d 383 (Tenn.App.1983), a rule that state employees who assist the elderly and infirm in their homes may not discuss religion was found to be required by the Establishment Clause and was thus not an infringement upon the free exercise of religion.

■ The appellant's argument under the Free Exercise Clause has greater strength, but still falls short of stating a constitutional violation. Relying on *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Thomas v. Review Board of Indiana Employment Security,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) the appellant contends that the state has denied employment to her on the basis of her religion. In *Sherbert* the appellant, a Seventh-day Adventist, was denied unemployment benefits because she refused to work on Saturdays contrary to her religious beliefs. The United States Supreme Court noted that the state's ruling "forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." 374 U.S. at 404, 83 S.Ct. at 1794. In *Thomas,* the petitioner, a Jehovah's Witness, refused to work when his employer transferred him to a department directly involved in the production of weapons. He claimed that his

religious beliefs precluded him from engaging in such work. He was thereafter denied unemployment benefits. The Court stated that "[h]ere, as in *Sherbert*, the employee was put to a choice between fidelity to religious belief or cessation of work." 450 U.S. at 717, 101 S.Ct. at 1431–32.

■ The appellee argues that *DePriest v. Bible, supra,* forecloses the constitutional issues on the basis of collateral estoppel and *res judicata.*[1] Since the *Thomas* decision was handed down subsequent to *DePriest v. Bible,* however, we believe some further discussion of the constitutional issues is indicated along with a statement of the reasons why we find that *Sherbert* and *Thomas* are inapposite to the case at bar. The cases are distinguishable on the basis that the choice was never forced upon the appellant here. Mrs. DePriest has no religious objection to the nature of her work as did Thomas. She was faced only with the alternative of more carefully managing the generous amount of leave time available to her or foregoing the observance of her days of rest. Sherbert was required to work on Saturdays, but Mrs. DePriest would not have been required to work during the Feast of Tabernacles if she had not already taken so much leave and created a backlog of work. While Thomas and Sherbert could not have kept both their employment and their religious conscience intact, Mrs. DePriest had ample opportunity to do both. Her failure to do so should not impose a burden on the state.

■ We further hold that the appellant misreads Article 11, § 15, of the Constitution of Tennessee which provides: "No person shall in time of peace be required to perform any service to the public on any day set apart by his religion as a day of rest." The reference here to "service to the public" is not an allusion to public employment such as is controlled by contract between the parties, but rather to public service which may be compelled by the state. This interpretation is enhanced by the phrase "in time of peace," which

appears in this section. When it is not a time of peace, one may be conscripted into public service as needed according to law; but in time of peace, no one shall be "required," that is, compelled or conscripted to perform such service upon any day of rest set apart by his religion. If this section embraced all public employment contracts, as appellant contends, then no state policeman could be required to work on a day of rest set aside by his religion, e.g. Saturday or Sunday. We do not believe this was the intent of the framers of our state constitution. There are other provisions of law designed to deal with the issues presented here, but this section of our state constitution is inapplicable to the facts at hand.

■ The appellant correctly maintains that the reasonable accomodation standard has been incorporated into Tennessee law through legislation which established the Human Rights Commission. *See* T.C.A. § 4–21–101 *et seq.* In the chapter dealing with rules for the Tennessee Commission for Human Development (now the Human Rights Commission), the Official Compilation of Rules and Regulations of the State of Tennessee states: "The guidelines on religious discrimination promulgated by the United States Equal Employment Opportunity Commission as last amended on July 10, 1967, which appears in 29 CFR 1605, are adopted and incorporated by reference." § 1500–1–.11(1) · The relevant guideline declares that there is "an obligation on the part of the employer to make reasonable accommodations to the religious needs of employees and prospective employees where such accomodations can be made without undue hardship on the conduct of the employer's business." 29 CFR 1605.

It is further contended by the appellant that the Tennessee Civil Service Act incorporates the reasonable accommodation standard by virtue of its reference to federal law in T.C.A. § 8–3227 (the statute in its

---

1. For a helpful discussion of the distinction in collateral estoppel and *res judicata,* see *Umber-field v. School District No. 11,* 185 Colo. 165, 522 P.2d 730 (1974).

present form appears at T.C.A. § 8–30–327). That section stated, in pertinent part:

Any regular employee, who is dismissed or demoted, may appeal to the commission within fifteen (15) days after such action is taken; provided that this section shall not apply to a transfer of any employee from a position in one division to a position in that same class or rank in another division, as provided in § 8–3218. This latter provision shall be operative only to the extent it is not contrary to or violative of any applicable federal statute, rule or regulation.

T.C.A. § 8–3218 provided that a lateral transfer of a state employee could not be appealed, and it reiterated the qualification concerning federal law. The clear import of the language in these sections is that the limitation on appeals must conform to federal law, whether in the context of the Due Process Clause or otherwise. It would require a strained and unnecessary interpretation to read these sections as referring to the Equal Employment Opportunity Act and the reasonable accomodation standard.

It is also the contention of the appellant that the statutes relating to the Human Rights Commission and the Civil Service Commission are to be construed *in pari materia* so that the Civil Service Commission would be required to apply the reasonable accomodation standard. The courts of this state have often said that statutes relating to the same subject matter should be construed together. *Belle-Aire Village, Inc. v. Ghorley,* 574 S.W.2d 723 (Tenn.1978); *American City Bank v. Western Auto Supply Co.,* 631 S.W.2d 410 (Tenn.App.1981). The two statutes here, however, do not relate to the same subject matter. Although there may be a degree of overlapping, one deals with discrimination in the workplace while the other is concerned with establishing and maintaining a merit system for state employees. The basis of construing statutes *in pari materia* is to determine the intent of the legislature where the intent is unclear. *See* 82 C.J.S., Statutes § 366.

The intent of the General Assembly, however, is clear enough from the plain reading of the statutes. The enforcement of claims pursuant to T.C.A. § 4–21–101 *et seq.,* must be brought before the Human Rights Commission. The appellant contends that separating her avenues of relief creates an absurdity in that she would be forced to appeal both to the Civil Service Commission and to the Human Rights Commission in order to obtain complete relief from the same alleged cause of action. It is significant to note that the appellant did not hesitate to appeal the denial of unemployment benefits through a separate body. The distinctiveness of the separate actions herein may be clearly seen in the disparity between the time limitations within which a claimant may appeal, with 180 days allowed before the Human Rights Commission, T.C.A. § 4–21–115, and 15 days before the Civil Service Commission, T.C.A. § 8–3227. The fact of the matter is that the appellant is not seeking to construe two statutes *in pari materia,* but rather to put together the administrative regulation which requires reasonable accomodation with the statute governing appeals to the Civil Service Commission. Under our law we hold that the Civil Service Commission was not required to apply the reasonable accomodation standard.

Even if the Commission were required to apply the reasonable accomodation standard, we believe the evidence shows that this standard was met. THDS's objection to granting the leave was based on the backlog of work which had resulted from Mrs. DePriest's prior absences and on the fact that her duties were not immediately interchangeable with other employees. Unlike the case in *Willey v. Maben Mfg., Inc.,* 479 F.Supp. 634 (N.D. Miss.1979), where the employer had ample warning of the claimant's request for leave and where the employer had previously allowed WCG members to celebrate their days of rest, TDHS was given less than a month's notice of appellant's requested leave.

In *Hildebrand v. Unemployment Insurance Appeals Board*, 19 Cal.3d 765, 566 P.2d 1297, 140 Cal.Rptr. 151 (1977), the denial of a WCG member's unemployment benefits was upheld because she refused to work on Saturdays after accepting employment with full knowledge of the employer's Saturday work requirement. In the instant case Mrs. DePriest accepted employment knowing that she would be allowed only a certain number of days of annual and sick leave. She not only exhausted those days, but failed to give timely notice to TDHS of the request for additional leave for her religious days.

In *School District #11 v. Umberfield*, 32 Colo.App. 306, 512 P.2d 1166 (1973), mod. 185 Colo. 165, 522 P.2d 730 (1974), the dismissal of a tenured teacher who was a member of the WCG was upheld after it was shown that his absence disrupted student progress and disquieted other teachers. The charges were brought after the teacher took unauthorized leave from school to attend his religious holy days. In the present case the appellant was the only person in the office assigned to her particular area of work. The proof showed that there was no one available to assume her responsibilities during the projected period of absence, and that a backlog of duties already existed due to her previous absences. We believe that under these circumstances TDHS fulfilled whatever obligation it had to accomodate the religious beliefs of the appellant.

For the reasons stated herein, the issues are decided against the appellant and the judgment of the Chancellor is affirmed. Costs are adjudged against the appellant.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.