Nell A. CAMMACK; Genie Lucas; Douglas Paul Root; Carolyn L. Stapleton; Michele Wallace, Plaintiffs–Appellants,

v.

John W. WAIHEE, in his capacity as Governor of the State of Hawaii; Alfred Lardizabal, in his capacity as Director of Personnel Services of the State of Hawaii; Frank F. Fasi, in his capacity as Mayor of the City & County of Honolulu; Jeremy Harris, in his capacity as Managing Director of the City

& County of Honolulu; Loretta K. Fukuda, in her capacity as the Director of Civil Service of the City & County of Honolulu; United Public Workers, Local 646, AFSCME; Hawaii Government Employees' Association, Local 152, AFSCME; Hawaii State Teachers Association; University of Hawaii Professional Assembly; Hawaii Fire Fighters Association, Local 1463, IAFF; State of Hawaii Organization of Police Officers, Defendants–Appellees.

No. 87–15073.

United States Court of Appeals, Ninth Circuit.

Aug. 13, 1991.

Before D.W. NELSON, O'SCANNLAIN and TROTT, Circuit Judges.

### ORDER

A majority of the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc. Judge D.W. Nelson would grant the petition for rehearing and accept the suggestion for rehearing en banc.

The full court has been advised of the en banc suggestion. An active judge called for an en banc vote, and a majority of the active judges of the court has voted to reject the suggestion for rehearing en banc. Fed.R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

REINHARDT, Circuit Judge, with whom HUG, PREGERSON, POOLE and NORRIS, Circuit Judges, join, dissenting from the denial of rehearing en banc.

For the first time, a court has held that a purely religious holy day may be made an official state holiday. Good Friday, the annual date on which Western Christians commemorate the crucifixion of Jesus Christ, is by law a public holiday in Hawaii. State and local government offices are closed and most public employees receive paid leave. By making Good Friday a public holiday, the Hawaii statute officially consecrates that event. It incorporates a purely religious holy day into the state calendar and says to those not of the majority religion: "Thou shalt celebrate this religious occasion." By doing so, the state of Hawaii establishes religion in violation of the Constitution. Nevertheless, by a 2–1 vote, a panel of this court found the Hawaii statute constitutional. Our refusal to reconsider that decision en banc substantially undermines one of the First Amendment's most critical provisions.

It is not surprising that the Hawaii legislature selected Good Friday rather than, say, Yom Kippur or Ramadan as the date for its additional state holiday. Good Friday is after all the holy day celebrated by members of the majority religion in this country. There are many reasons to be concerned when the government seeks to clothe itself in the religious ritual of the majority, not the least of which is the effect upon those with different views. By consecrating a Christian holy day, the Hawaii legislature has effectively sent the rest of the population a message. That message is not only that the state officially recognizes the religious preference of the majority, but more important, that the state considers the beliefs of those in the minority to be unworthy of similar respect.[1] While official recognition of any or all religions is prohibited by the constitution, the preference of the majority religion over all others is certainly among the principal offenses the first amendment condemns.

Additionally troubling is the impact this message will have on children for whom school is closed on Good Friday. How can parents forthrightly explain to their children the reasons for the official school holiday except by stating that it commem-

---

1. "Endorsement sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Lynch v. Donnelly*, 465 U.S. 668, 689, 104 S.Ct. 1355, 1367, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring).

orates the crucifixion of Jesus Christ? Such an explanation is sure to arouse feelings of discomfort, of differentness, of isolation from their teachers and classmates in non-Christian school children, who are even more susceptible to feelings of social alienation than are their parents. *See Edwards v. Aguillard,* 482 U.S. 578, 584–85, 107 S.Ct. 2573, 2577–78, 96 L.Ed.2d 510 (1987); *School District of Abington Township v. Schempp,* 374 U.S. 203, 289–90, 83 S.Ct. 1560, 1606–07, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring). It is unfortunate that, still today, so many adherents of the majority religion fail to comprehend the psychological effect that the state's endorsement of that religion has upon children whose views and upbringings differ from their own.

Our refusal to grant en banc consideration is disturbing for other reasons as well. The significance of our decision in this case goes beyond the issue of religion: the majority opinion reflects a growing willingness to accept the imposition of majoritarian control at the expense of individual rights. Ours is a heterogeneous society in which tolerance of different ideologies and views has historically been enforced and encouraged through the first amendment. Yet in recent years we have witnessed increasing legislative restrictions on individual freedom in laws regulating religious practice, sexual conduct, and nonobscene expression. And we have witnessed an increasing willingness on the part of the judiciary to allow the social, moral, and cultural precepts of the majority to dictate the choices available to those with different views.

We are creeping closer and closer to a state-imposed orthodoxy—an orthodoxy firmly outlawed by a Bill of Rights that the courts are supposed to enforce with vigilance. Our ruling upholding the official consecration of Good Friday is an unfortunate step toward that state of orthodoxy, toward the establishment of an officially preferred ideology governing the views and conduct of all Americans. While the sanctioning of an official religious holiday may appear to be only a minor Constitutional violation, every measure by which the majority is enabled to exert dominion over the personal beliefs and values of the minority does serious injury to our fundamental liberties.[2]

The decision which we refuse to consider en banc is clearly contrary to existing legal doctrine. As the following brief review of the central legal issues demonstrates, the Hawaii law violates both the "purpose" and "effect" prongs of the *Lemon* test. *See Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). However the majority opinion does not merely misapply the law; it creates a substantially weaker Establishment Clause jurisprudence in our circuit. It is particularly unfortunate that, at a time when official tolerance for minority views is decreasing, our court is not even willing to pause momentarily in order to reflect en banc before joining the rush toward unrestrained majoritarianism.

I

Purpose

As the majority opinion recognizes, a necessary condition for upholding a statute challenged on Establishment Clause grounds is that the statute have "a secular legislative purpose." 932 F.2d 765, 773 (quoting *Lemon,* 403 U.S. at 612, 91 S.Ct. at 2111). The majority contends that the purpose of the statute at issue is "to provide Hawaiians with another holiday." 932 F.2d at 777. This is undeniably a secular purpose; however, it constitutes an incom-

---

2. The playwright Arthur Miller has warned that [p]eople ought to ask themselves why such good men as Washington, Jefferson and the rest took such explicit steps to keep praying out of politics. It was to spare America the inevitable misuse of religiosity-by-government that had helped to fasten tyranny on Europe.... For the United States to take a single step down that road is not merely folly but a destruction of policy that has worked beautifully for two centuries and has attracted the respect and envy of persecuted religious people everywhere in the world.
A. Miller, "School Prayer: A Political Dirigible," N.Y. Times, March 12, 1984, at A17, col. 1.

plete and highly misleading description of the purpose of the Hawaii statute.

Further, the majority assumes that a statute need only have *a* secular purpose. In fact, that is not enough. A careful analysis of the Supreme Court's decisions concerning the purpose prong of *Lemon* demonstrates the majority's error. As Justice O'Connor stated, in the course of casting the crucial fifth vote, the purpose prong "is not satisfied ... by the mere existence of some secular purpose, however dominated by religious purposes." *Lynch*, 465 U.S. at 690–91, 104 S.Ct. at 1368–69 (O'Connor, J., concurring). If a principal purpose is to further religion, the statute is void.

That *any* secular purpose is insufficient under *Lemon* is clear from the fact that *every* statute can be described in such a way that it includes a secular purpose. For example, if a public school were to offer a course in which students were instructed to read the Bible not as literature but as the revealed word of God, it could be said that *a* purpose of the practice is to foster literacy. As a factual matter this might well be correct. The School Board may have decided that it is important for the students' minds that they read books, and that it is important for their immortal souls that one of the books they read be the Bible. Thus, the Bible-reading has a secular purpose (literacy) as well as a religious purpose. However, the secular purpose is wholly irrelevant to the real issue the court must determine. From a constitutional standpoint, the question is: having decided that students should read books, was there a legitimate secular purpose behind the *further* decision that the students should read the Bible? Similarly, if a state passed legislation requiring the erection at every other street corner of a pole containing a stop sign with the word "STOP" and a picture of Jesus Christ in the background, there is no doubt that a purpose of the statute would be to regulate the flow of traffic and require vehicles to stop. However, from a constitutional standpoint, the question that would have to be asked is: why the picture of Jesus Christ? Is the purpose of requiring the picture to be on the sign secular? In the case before us, the question is: *having decided that Hawaiians should have another holiday, was there a legitimate secular purpose behind the legislature's further decision to select Good Friday as that holiday?* The majority in *Cammack* fails to ask that fundamental question.

To put it another way, what the majority should have recognized is that the purpose of a law selecting a particular day for an additional holiday necessarily includes the purpose behind the selection of that particular day. That the Hawaii legislature wanted to create another holiday is an incomplete description both of the statute and of its purpose. In determining statutory purpose, we must consider all essential elements of the statute, not just those of secular origin. A full and fair description of the Hawaii statute leads to the inexorable conclusion that a primary purpose underlying its enactment was to foster the observance of religion; accordingly, the statute fails the first prong of the *Lemon* test.

Although the majority fails to ask the right question,—why Good Friday?—it does provide what appears to be its answer to that inquiry. The opinion argues that the decision to select Good Friday was in fact motivated by calendar concerns, i.e., that Good Friday happened to be a convenient date for another holiday. Remarkably, as support for this conclusion, the majority cites the legislative history, which states clearly that the supporters of the bill that made Good Friday a legal holiday believed that Good Friday, as "a day of solemn religious observance by the members of the various churches and religious denominations[,] should be given legal sanction." 932 F.2d at 784. The opinion in fact points to no evidence that calendar concerns motivated the selection of Good Friday as a legal holiday, *see* 932 F.2d at 784. (Nelson, D.W., dissenting). Indeed, it would be difficult to imagine a *less* appropriate holiday to select on the basis of "calendar" concerns, since Good Friday does not occur on a fixed date or even in the same month each year. Rather, it is

defined—pursuant to ecclesiastical law—as the Friday preceding the first Sunday after the first full moon after the vernal equinox. *Random House College Dictionary* 416, 568 (rev. ed. 1980).

The majority also suggests that the purpose of selecting Good Friday as an official holiday was to accommodate the religious needs of many of its people. It is worth noting that this suggestion further belies the notion that Good Friday was merely a convenient date for a holiday. Moreover, the justification fails on its own terms. In the context of the Court's Establishment Clause jurisprudence, accommodation of religion means the lifting of government-imposed burdens on the free exercise of religion. *See, e.g., Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144–45, 107 S.Ct. 1046, 1051–52, 94 L.Ed.2d 190 (1987). If the statute at issue required that state and local employees who wished to celebrate Good Friday be *permitted* not to work on that day, then it could be characterized as accommodation. However, it *mandates* that the government close down. This is not accommodation, but establishment.

## II

### ENDORSEMENT

A statute which signifies official endorsement of religion violates the effects prong of *Lemon. Lynch*, 465 U.S. at 692, 104 S.Ct. at 1369 (O'Connor, J., concurring). The focus of the inquiry is on the message the statute communicates. Here, that message is unmistakable. Good Friday is a wholly sectarian holiday. By contrast with Sunday, Thanksgiving, and Christmas—each of which has come to have secular

significance—there is no recognizable secular tradition surrounding Good Friday. While non-believers may associate Sundays with recreation, Thanksgiving with eating turkey, and Christmas with sending and receiving gifts and greeting cards, one is hard-pressed to come up with any analogous practices associated with Good Friday. Good Friday connotes the Crucifixion—and nothing else.

Two state courts have considered the argument that Good Friday, like Sunday, Thanksgiving and Christmas, has developed into a secular holiday. Both squarely rejected this contention. As the Connecticut Supreme Court stated, "the passage of time has not converted Good Friday into a secular holiday or freed it of its clearly religious origins." *Griswold Inn, Inc. v. State*, 183 Conn. 552, 441 A.2d 16, 21 (1981). In striking down an official Good Friday holiday, the California Court of Appeal agreed, observing that "there is no evidence in the present case that the Christian holy day of Good Friday has become secularized in any degree during the course of its longtime observance by Christian sects." *Mandel v. Hodges*, 54 Cal.App.3d 596, 612, 127 Cal.Rptr. 244, 254 (1976). While no federal court has directly faced the question presented by this case,[3] every state court to have considered an Establishment Clause challenge to state actions investing Good Friday with legal significance has found a constitutional violation. *See id.* (invalidating executive order granting three hours of paid leave for state employees on Good Friday); *Griswold Inn* (invalidating prohibition of liquor sales on Good Friday); *Samuels v. Oberly*, No. 83M–JN–16 (Del.Super.Ct. February 7, 1984) (unpublished opinion) (same).[4]

**3.** In the context of an Establishment Clause challenge to a different practice, one district court has remarked that Good Friday should be classified among those "holidays with a purely religious significance." *Florey v. Sioux Falls School Dist.*, 464 F.Supp. 911, 915 (D.S.D.1979), *affirmed by* 619 F.2d 1311 (8th Cir.), *cert. denied*, 449 U.S. 987, 101 S.Ct. 409, 66 L.Ed.2d 251 (1980).

**4.** Some state courts have upheld terms in collective bargaining agreements making Good Friday a holiday, not on the theory that Good Friday is

a secular holiday but because, in the view of those courts, the designation of the day as a holiday was not attributable to state action. *See California School Employees Ass'n v. Sequoia Union High School Dist.*, 67 Cal.App.3d 157, 136 Cal.Rptr. 594 (1977); *Americans United for Separation of Church and State v. Kent County*, 97 Mich.App. 72, 293 N.W.2d 723 (1980). In addition, one federal district court has upheld a Good Friday holiday that was the result of a negotiated contract with a labor union. *See Franks v. Niles*, 29 Fair.Empl.Prac.Cas. (BNA)

The majority attempts to show that non-believing Hawaiians have come to view Good Friday as a popular shopping day. That may well be true. People tend to shop on holidays when stores remain open. However, whatever incidental association of Good Friday with shopping may exist falls far short of the sort of independent secular tradition that justifies Sunday, Thanksgiving and Christmas holidays. *See Lynch*, 465 U.S. at 685, 104 S.Ct. at 1365 ("That the display brings people into the central city, and serves commercial interests and benefits merchants and their employees, does not ... determine the character of the display."). Even the majority recognizes that the Good Friday holiday cannot be justified on the basis of long tradition. *See* 932 F.2d at 772 (distinguishing *Marsh v. Chambers*, 463 U.S. 783, 786, 103 S.Ct. 3330, 3333, 77 L.Ed.2d 1019 (1983), which upheld Nebraska's practice of opening the state legislature's sessions with a prayer on the basis of a "deeply embedded" historical tradition). Thus, the Sunday, Thanksgiving, and Christmas analogies are inapplicable, even under the majority's analysis.

As Justice Holmes told us, the life of the law has been "experience." I doubt that there is a person among us who in good conscience could say that Good Friday has taken on the same type of secular meaning, commonality, and acceptability as Sunday, Thanksgiving, or Christmas. In fact, there can be no doubt that Good Friday is a solemn religious occasion, pure and simple, and marks one of the holiest moments of a particular religious faith. That is the occasion which Hawaii has chosen to consecrate and on which it has placed the official endorsement of the state.

### III

At one time in our nation's history, laws making Sunday and Christmas official holidays had purely religious purposes and effects. Had someone challenged such laws under the Establishment Clause during the infancy of the Republic, and had the Supreme Court of that era applied our modern jurisprudence, the laws might well have been struck down and the secular traditions never developed. However, such challenges were not brought and the secular traditions did develop. As the majority recognizes, we must interpret the Establishment Clause in light of that reality. *See McGowan v. Maryland*, 366 U.S. 420, 445, 81 S.Ct. 1101, 1115, 6 L.Ed.2d 393 (1961) (noting the irrelevance of the religious origins of a Sunday closing law where Sunday had taken on secular significance). Yet the majority fails to recognize a necessary corollary of the *McGowan* principle. Where, as here, no independent secular tradition yet exists, the law cannot be justified on the basis of the hypothesis that such a tradition might eventually develop.

In any event, it is difficult to imagine that those to whom Good Friday is a sacred day would particularly relish the prospect of its coming to be known as a public holiday like any other—i.e., as a day commemorated largely by sporting events and appliance sales. Indeed, the Establishment Clause serves in part to protect the religious realm from the secular. *See* L. Tribe, *American Constitutional Law*, 1171 & n. 14 (2d ed. 1988) (discussing, *inter*

1114, 30 Empl.Prac.Dec. (CCH) 33,297 (N.D.Ohio 1982). In the case before us, the unions argue that even if we were to reverse the majority's decision with respect to the statutory Good Friday holiday, our decision would have little practical effect because much of what the statute accomplishes is duplicated in collective bargaining agreements.

The Supreme Court's most recent opinion concerning state action seriously undermines the decisions holding that a state's agreement to a term in a contract does not constitute state action. *Edmonson v. Leesville Concrete Co., Inc.,* — U.S. —, —, 111 S.Ct. 2077, 2079,

114 L.Ed.2d 660 (1991), holds that a judge's role in supervising the exercise of peremptory challenges by private litigants constitutes "significant participation of the government," and therefore justifies a finding of state action. It appears to follow *a fortiori* that a state's *agreement* to a term in a contract is also state action.

In any event, in the present case, the majority did not rest its decision on the basis of any supposed absence of state action. Rather, it recognized that Hawaii's statutory designation of Good Friday as a public holiday was state action, but found that action consistent with the Establishment Clause.

*alia,* the views of Roger Williams). Distorting the First Amendment in order to allow a state to make a religious occasion an official holiday benefits no one, not even those who hold Good Friday sacred.

In the opinion we refuse to reconsider, the majority makes a number of additional errors, each of which is ably discussed in Judge D.W. Nelson's excellent dissenting opinion. I shall not repeat that discussion here. I simply close by noting that today we not only condone the abandonment of sound constitutional principles of long-standing duration, but we take one further step down the path of majoritarian control of the lives and beliefs of all our citizens.[5]

PREGERSON, Circuit Judge, dissenting from the denial of rehearing en banc.

I join in Judge Reinhardt's compelling dissent from the denial of rehearing en banc. We all need to bear in mind the wise words of Mr. Justice Black: "[T]he only way to protect minority religious groups from majority groups in this country is to keep the wall of separation between church and state high and impregnable as the First and Fourteenth Amendments provide." *Board of Educ. of Cent. School Dist. No. 1 v. Allen,* 392 U.S. 236, 254, 88 S.Ct. 1923, 1932, 20 L.Ed.2d 1060 (1968) (Black, J., dissenting).

KOZINSKI, Circuit Judge, dissenting from the denial of rehearing en banc.

The three carefully crafted opinions in this case illustrate well the shortcomings of the *Lemon* test. In any event, I believe that Judge Reinhardt's dissent raises concerns of sufficient magnitude to warrant en banc consideration of this important case of first impression.

---

**5.** Almost fifty years ago, Justice Jackson wrote that "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia Board of Educ. v. Barnette,* 319 U.S. 624, 642, 63 S.Ct.

1178, 1187, 87 L.Ed. 1628 (1943). Though time may have made these words trite, it surely has not made them any less true.