IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
_____

**CHARLES STEPHEN SANFORD,**

Petitioner-Appellee,

Vs.                                     C.A. No. 01A01-9710-CH-00578

**TENNESSEE DEPARTMENT OF
ENVIRONMENT & CONSERVATION
and TENNESSEE CIVIL SERVICE
COMMISSION,**

Respondents-Appellants.
_____

FILED

August 19, 1998

Cecil W. Crowson
Appellate Court Clerk

FROM THE DAVIDSON COUNTY CHANCERY COURT
THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


James G. Stranch III
Bryan E. Pieper
Branstetter, Kilgore, Stranch & Jennings of Nashville
For Appellee

John Knox Walkup, Attorney General and Reporter
Eugenia B. Whitesell, Assistant Attorney General
For Appellants



*REVERSED AND REMANDED*

Opinion filed:




**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**



**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This is an appeal from the trial court's reversal of a final order of the Tennessee Civil

Service Commission (the Commission). The Commission's final order upheld

Petitioner/Appellee Charles Sanford's termination of employment with the Department of

Environment and Conservation (TDEC) based on insubordination. The trial court reversed the Commissioner's order, finding that it was not supported by substantial and material evidence.

The pertinent facts are as follows: Charles Sanford was employed by the Department of Environment and Conservation, Division of Construction Grants and Loans (CGL Division) in 1987. Sanford joined a section of the CGL Division, called the facilities assessment section, in March 1992 and remained there until his discharge in January of 1993. Among its functions, the facility assessment section bi-annually completes a wastewater facility needs survey (Needs Survey) that it submits to the EPA. Sanford's primary job responsibilities during 1992 included assisting with the Needs Survey. He was assigned to work with the other staff and his supervisors to collect information from municipalities in Tennessee regarding wastewater needs and then to submit the information on a computer data base in accordance with the EPA's guidelines.

Sanford received an oral warning on April 16, 1992 for insubordination related to his frequent unannounced and unscheduled visits to TDEC Commissioner Luna's office. Prior to 1992 Sanford received two oral warnings for similar conduct, including incidents of abusive language toward his supervisor and a fellow employee. The April 16, 1992 oral warning was followed with a letter dated April 21, 1992, which advised Sanford that he must discontinue the insubordinate behavior or further disciplinary action, up to and including dismissal, would result.

On November 25, 1992, Sanford received a written warning for his continued unprofessional behavior and his habit of spending time on extraneous issues. The written warning relayed an incident where Sanford disobeyed the directions of his supervisor and was "rude, loud, and unprofessional" when questioned on the matter. The written warning also documents that Sanford continued to pursue personal projects at work that were not directly related to his job.

The next incident that promoted punishment occurred on December 17, 1992. Sanford's supervisor, Karen Grubbs (Grubbs), specifically asked Sanford to review data on municipalities for which he was responsible. Sanford refused to do the work stating that he was "working on a proposal for a Joint Resolution for Congress." Although he was specifically told not to pursue that work on state time, he continued to do so. Sanford told his supervisor that she was making him sick and requested annual leave for the rest of the day. The request was denied and Sanford

asked for sick leave. The sick leave was approved on the condition that he would go home. Sanford did not go home but, instead, remained in the office. Grubbs reported to Ron Graham (Graham), director of CGL Division, that Sanford was in the office being very disruptive and "wild eyed." Graham had to request that Sanford leave the office.

As a result of the December 17 incident, combined with numerous formal and informal oral and written warnings regarding his insubordination, Grubbs recommended to Jim Poff (Poff), deputy director of the GCL division, and Graham that Sanford be suspended for 3 days for insubordination. A due process hearing was held on December 21, 1992. At the hearing, Sanford did not make any responses to the charges and the suspension was upheld.

Immediately after the hearing, Graham met with Grubbs, Sanford and Poff regarding the Needs Survey. They discussed the importance of completing as much work as possible that day in order to meet the upcoming deadline. After the meeting, Sanford requested to take off the rest of the afternoon. Grubbs denied the leave, but told Sanford he could leave after he finished his assignment specified at the meeting. Despite her response, Sanford handed the receptionist a leave slip and told her that he was leaving for the rest of the afternoon. Graham attempted to stop Sanford at the elevator and again explained to him the importance of completing the project that day. Graham reminded Sanford of the due process hearing held earlier that day and told Sanford that if he left without approved leave it would result in his termination. Sanford's only response was "Get real," as he got on the elevator and left. Sanford returned later in the day, but he did not explain his previous behavior and refused to tell his supervisors what time he had returned.

As a result of this incident, Grubbs and Graham recommended by memoranda dated December 22, 1992, termination of Sanford's employment based on insubordination. By letter dated December 28, 1992, David Gregory, Assistant Commissioner of TDEC, notified Sanford of the recommendation for termination and notified Sanford that his due process hearing would be held on December 30, 1992. The letter stated in pertinent part:

> Attached for your review are your supervisor's and director's reports of an    incident which occurred Monday, December 22, [sic] 1992, following your informal hearing for insubordination. The reports describe your response to Karen Grubbs' refusal to grant annual leave after she had discussed the importance of completion of a portion of the Needs Assessment project.

> Before the suspension had been decided after the due process
> hearing for insubordination this morning you again exhibited
> disregard for direct instructions of your supervisor, Karen
> Grubbs, and the Division director, Ron Graham, by
> indicating that you were on leave.
>
> Because of your continued disregard of reasonable work
> assignments, you are again charged with insubordination and
> have been recommended for termination.

The supervisors' memoranda recommending termination were attached to the letter. Grubbs's memo contained all the issues relating to the recurring disruptive and insubordinate behavior that kept escalating until his dismissal. She explained how his activities had affected his job performance and specifically noted:

> His credibility with the EPA-Region IV and HQ has been
> severely impaired        by his constant refusal to follow guidelines
> and procedures established for the Needs Survey. EPA HQ
> personnel have requested that Steve not communicate with HQ
> staff as TN Needs Coordinator, which presents a hindrance in
> effectively compiling an accurate estimate of TN Needs. The
> constant determination to represent information "his way" has
> caused much of the information to be not included in the EPA
> report. Over the past year, Steve has been directly insubordinate
> to me by pursuing activities he was told        not to pursue, by not
> performing assignments as instructed, by not keeping me
> informed of is whereabouts and activities -- even when asked
> directly. He has also told me I am not his supervisor on several
> occasions.

Sanford's employment was terminated by letter dated January 19, 1993. Sanford filed a grievance regarding his dismissal and subsequently had a Level IV grievance hearing. By letter dated February 17, 1993, Commissioner Luna upheld the dismissal. Sanford appealed the decision to the Commission, and a hearing was held June 28 - 30, 1994 and June 25 - 26, 1995 before an Administrative Law Judge. On August 8, 1995, the Administrative Law Judge entered an Initial Order upholding Sanford's termination on the ground of insubordination. Sanford appealed to the Civil Service Commission (CSC), and the Commission adopted the ALJ's findings. (A copy of the initial order is attached as an addendum to this opinion.)

Sanford filed a petition for judicial review in the trial court. The trial court reversed the CSC order, finding that the order lacked specificity as to the charge of insubordination and was not supported by substantial and material evidence. The trial court further found that TDEC had failed to comply with T.C.A. § 8-30-331 (b)(1) (1993), which entitles an employee to detailed notice of the charges against the employee.

4

The State appeals the judgment of the trial court and the issues for our review are: (1) whether the trial court erred in ruling that the Civil Service Commission's final order was not supported by substantial and material evidence, and (2) whether the trial court erred in ruling that the Department of Environment and Conservation failed to comply with T.C.A. § 8-30-331 (b)(1), as to notice of the charges against him.

As to the first issue, the State argues that the administrative record is replete with substantial and material evidence that termination was appropriate based on the incident that occurred on December 21, 1992 and Sanford's behavior prior to this incident. The trial court's review of the Commission's decision is governed by T.C.A. § 4-5-322 (h) (Supp. 1997), which sets forth the standard of review on appeal of administrative proceedings as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> > (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

In *Tennessee Dep't of Human Servs. v. Tennessee Civil Servs. Comm'n*, No. 01A01-9504-CH-00143, 1995 WL 581086 (Tenn.App. Oct. 5, 1995), this Court said:

> The scope of review in this Court is the same as in the trial court: to review findings of fact of the administrative agency upon a standard of substantial and material evidence. *Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664 (Tenn.1997); *DePriest v. Puett*, 669 S.W.2d 669 (Tenn.App. 1984). Thus, substantial and material evidence is required to sustain the action of an administrative tribunal. *Pace v. Garbage Disposal Dist.*, 54 Tenn.App. 263, 267, 390 S.W.2d 461, 463 (1965). What amounts to "substantial and material" evidence as contained in T.C.A. § 4-5-322 (h) is not clearly defined in the statute. Generally, the standard requires "something less than a preponderance of the evidence." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W. 2d 274, 280

5

> (Tenn.App.1988); *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026 16 L.Ed.2d 131 (1966), "but more than a scintilla or glimmer." *Wayne County*, 756 S.W.2d at 280; *Pace*, 54 Tenn.App. at 267, 390 S.W.2d at 463.

*Tennessee Dep't of Human Servs.,* 1995 WL 581086, at *3.

The mandate to the Court is quite explicit that while this Court may consider evidence in the record that detracts from its weight, the court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. T.C.A. § 4-5-322(h), *Pace*, 54 Tenn. App. at 266, 390 S.W.2d at 463.

The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *Pace*, 54 Tenn.App. at 267, 390 S.W.2d at 463.

Under the narrow scope of review set out in T.C.A. § 4-5-322 (b), we find that the trial court erred in reversing the Commission's decision to uphold Sanford's termination. Specifically, we find that the Commission was not in error in considering prior incidents of insubordination and disciplinary matters that involved Sanford. Supervisors have the discretion on how to discipline an employee. This Court held in *Tennessee Dep't. of Human Services*, that dismissal is appropriate when a lesser disciplinary action will not end the behavioral problem. *Id.*, 1995 WL 581086, at *4. In the instant case, Sanford had not effectively been performing his job and was disturbing the CGL Division, and previous attempts at discipline had failed. The record before the ALJ and the trial court clearly showed that throughout his employment, Sanford had consistently been warned against insubordinate behavior.

We cannot agree with the lower court's conclusion that the CSC failed to include specific findings concerning the charge of insubordination for his conduct on December 21, 1992. After Sanford attended the meeting with Graham, Poff and Grubbs to discuss the importance of completing the work quickly, he asked for annual leave for the day. Although, his supervisor, Grubbs, denied the leave, Sanford left work anyway. Grubbs notified Graham of Sanford's intentions to leave work. Graham made a second attempt to persuade Sanford to stay as Sanford waited for the elevator. Graham again explained the importance of completing the assignment that day. He further told Sanford that if he left it would lead to his termination. Sanford refused to talk to Graham and told the receptionist to tell Graham that Graham was bothering him while

he was on his own time. His only words to Graham were "Get real" as he got on the elevator to leave. Despite Sanford's contention that he merely went to lunch and returned, he did not inform anyone of this. In fact, he turned in a leave slip for the entire day to the receptionist and told her that he was "gone for the day." Even when Sanford returned to the office later that day, he refused to tell his supervisor when he had returned and offered no explanation for his earlier behavior. Further, Sanford was overheard that afternoon to say that he was working on his own time. Thus, we hold that since previous disciplinary actions had not satisfactorily remedied Sanford's propensity for insubordinate conduct, the ALJ's judgment demonstrates why termination was appropriate based on the December 21, 1992 incident.

As to the second issue, the State avers that the December 28, 1992 letter and the attached memoranda provided Sanford with proper notice under T.C.A. § 8-30-331 (b)(1) that he was being terminated for his continuous insubordination and that the December 21, 1992 incident was the "straw that broke the camel's back."

T.C.A . § 8-30-331 (b)(1) provides:

**8-30-331. Minimum due process.** -

\* \* \*

(b) Minimum due process consists of the following:
(1) The employee shall be notified of the charges. such notification should be in writing and shall detail times, places, and other pertinent facts concerning the charges.

Basic due process requires "notice reasonably calculated under all the circumstances, to apprise interested parties" of the claims of the opposing parties. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657 94 L.Ed. 865 (1950). The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562-63, 56 L.E.2d 30 (1978).

The trial court's memorandum refers to the department's letter terminating Sanford's employment. This letter is dated January 19, 1993 and refers to the numerous incidents involving Sanford's insubordination and specifically refers to the informal hearing held on December 30, 1992 before Assistant Commissioner David Gregory. It is important to note that the December 30, 1992 hearing was held pursuant to a notice given in the letter dated December 28, 1992, which included as attachments reports from Sanford's supervisors and directors

relating the specific incident of December 22, 1992. The letter explicitly informed Sanford that his supervisors had recommended him for termination based on insubordination. The letter also attached memoranda written by Grubbs and Graham that described the incident on December 21, 1992, when Sanford had been insubordinate and noted a previous pattern of insubordination.

The letter and the memoranda show that Sanford's continued insubordination was considered in the decision to terminate him. The December 28, 1992 letter noted Sanford's "continued disregard of reasonable work assignments" and Grubbs's memorandum stated that Sanford had been insubordinate over the past year. Sanford should have been aware that an explanation for his insubordinate behavior throughout his employment would be necessary. Sanford was provided adequate pre-hearing notice of the facts which would be presented against him and of the policies which his conduct might be deemed to violate. Thus, we find that the State satisfied the constitutional due process requirements and the specific statutory and regulatory notice requirements.

The judgment of the trial court reversing the Commission's final order is reversed, and the case is remanded for such further proceedings as may be necessary. Costs of appeal are assessed against the appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**

8